William B. SCHEIDT and Wanda C. Scheidt, Plaintiffs–Appellees,

v.

William Randolph KLEIN, Defendant–Appellant.

No. 90–6123.

United States Court of Appeals, Tenth Circuit.

Feb. 11, 1992.

Robert F. Bourk and Ben F. Meek, Oklahoma City, Okl., for plaintiffs-appellees.

William R. Klein, pro se.

Before LOGAN and BARRETT, Circuit Judges, and KELLY,[*] District Judge.

---

[*] Honorable Patrick F. Kelly, District Judge, United States District Court for the District of Kansas, sitting by designation.

PATRICK F. KELLY, District Judge.

Defendant appeals[1] from an adverse judgment entered by the district court following a jury trial of Plaintiffs' claims of fraud and breach of contract arising out of Defendant's limited representation of Plaintiffs in certain Tax Court proceedings. The jury returned a verdict for Plaintiffs on both claims and awarded them $200,000 in compensatory damages and another $130,000 in punitive damages. R.Vol. II tab 182. The district court subsequently denied Defendant's post-trial motion for judgment n.o.v. but granted a conditional remittitur of $170,000 with respect to compensatory damages. *Id.* tab 196. Plaintiffs accepted the remittitur, judgment was entered accordingly, and Defendant appealed. *Id.* tabs 201, 202.

The basic facts and allegations pertinent to this appeal are recounted in the parties' briefs and will not be recited in detail again here. To summarize, Plaintiffs paid Defendant $30,000 to join a litigation group that he represented, which consisted of taxpayers seeking reversal of substantial deduction disallowances and attendant penalties arising out of a mining investment scheme in which they all had participated (through the International Monetary Exchange, or IME). According to Plaintiffs, Defendant made numerous, false representations regarding witnesses and documentary evidence already obtained or readily available—through efforts to be funded by Plaintiffs' financial contribution—to induce Plaintiffs to join the group. When the case was called for trial before the Tax Court in Florida a month later, it became apparent that Defendant did not have the promised evidence but, rather, was woefully unprepared. Following continuance of the trial date for other reasons, Plaintiffs terminated their relationship with Defendant and demanded return of all or a majority of their funds. Defendant subsequently refused either to refund Plaintiffs' money or to provide them with an accounting of how

their money had been spent. This lawsuit ensued.

## I. Venue

Defendant's first assignment of error concerns the district court's denial of his two motions seeking a change in venue pursuant to 28 U.S.C. § 1404(a). Several principles combine to make such a challenge an unlikely basis for reversal of an adverse judgment. First of all, "[i]n order to find error in the refusal to transfer [under § 1404(a)], it must appear that there was a clear abuse of discretion by the trial judge." *Metropolitan Paving Co. v. International Union of Operating Eng'rs*, 439 F.2d 300, 305 (10th Cir.), *cert. denied*, 404 U.S. 829, 92 S.Ct. 68, 30 L.Ed.2d 58 (1971); *see Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515, 1516 (10th Cir.1991). Secondly, "party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Chrysler Credit Corp.*, 928 F.2d at 1515. Finally, "[u]nless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir.1972); *see Texas E. Transmission Corp. v. Marine Office–Appleton & Cox Corp.*, 579 F.2d 561, 567 (10th Cir. 1978) ("Plaintiff's choice [of forum] is also given considerable weight."). Defendant seeks to overcome these principles collectively favoring the district court's ruling by asserting that (1) the majority of contemplated witnesses resided in Florida, (2) the pertinent documentary evidence was located primarily in Florida, (3) the conduct complained of, which occurred in Florida, was to be assessed under Florida substantive law, and (4) for all these reasons, the less expensive and more convenient forum for the litigation was in Florida. *See generally Chrysler Credit Corp.*, 928 F.2d at 1516 (factors pertinent to § 1404(a) determina-

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

tion) (quoting *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir.1967)).

Defendant identified eight Florida witnesses that he expected to call, six to testify regarding the work done in the IME case generally and two regarding his efforts on behalf of Plaintiffs in particular. R.Vol. I tab 41 (Defendant's affidavit). While, at least on the conclusory assertions made in support of Defendant's motion,[2] the latter witnesses *may have* had pertinent testimony to present, "nothing has been submitted ... to indicate the quality or materiality of the testimony of said witnesses[,] [n]or has Defendant shown that any such witnesses [were] unwilling to come to trial in Oklahoma City; that deposition testimony would be unsatisfactory; or that the use of compulsory process [would] be necessary." *ROC, Inc. v. Progress Drillers, Inc.*, 481 F.Supp. 147, 152 (W.D.Okla.1979). Since "it is necessary that some factual information relative to the materiality of witness testimony and the considerations mentioned above be supplied to the [trial court,]" *id.* (citations omitted), Defendant's meager showing failed to demonstrate the requisite inconvenience to his witnesses. Under essentially the same considerations, Defendant's conclusory averment regarding the boxes of (unidentified, undescribed) "documents existing relating to the instant cause of action, many of which will have to be produced in support of the defense," R.Vol. I tab 41 (Affidavit at 1), is clearly deficient. Defendant never attempted to explain, let alone substantiate, why these documents could not be sifted through (at his Florida offices) and the probative ones shipped at relatively minor cost to Oklahoma for trial. Finally, the applicability of Florida law is not a significant concern in light of the relative simplicity of the legal issues involved in the common law fraud and breach of contract claims tried in Oklahoma.

Undoubtedly, Defendant was inconvenienced somewhat by trial of the action in Oklahoma, as Plaintiffs would have been had the case been transferred to Florida. Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue. *ROC, Inc.*, 481 F.Supp. at 152. Under the principles set out above, we conclude that the district court did not abuse its discretion in denying Defendant's motions for transfer of the action to federal district court in Florida.

## II. Choice of Law

■ Before turning to Defendant's assignments of error regarding the conduct of trial and the sufficiency of the evidence, we diverge here from the sequence of issues as presented in Defendant's brief in order to dispose of two more pretrial matters. First, Defendant complains that he was substantially prejudiced by the district court's assertedly tardy ruling on whether Florida or Oklahoma law controlled in this action. *See* Appellant's Brief at 19–20. Defendant states that "[o]nly after all the testimony had been entered and the parties had rested, did the Court advise the parties that it was applying Florida law," *id.* at 19, that "[h]ad Appellant known that the Court had determined that Florida law applied, Appellant would have taken a totally different approach at trial," *id.* at 20, and that "there was no way Appellant, after the Court announced it was applying Florida law, could possibly research and prepare any argument pertaining to Florida law ... the Court's decision was after the parties had rested, and prior thereto the Court has [sic] led Appellant to believe Oklahoma law was to be applied," *id.*

As Plaintiffs note in their Answer Brief, however, Defendant's own statements on the record below belie these protestations of ignorance, reliance, and prejudice and indicate, rather, that when the district

---

**2.** It bears emphasizing that, as the pretrial maneuvers involved in the underlying tax litigation amply demonstrate, such witness designations, which do not actually commit the designor to anything, are of limited significance in and of themselves. We note here, for example, that

not one of the witnesses listed in Defendant's venue affidavit was even included in the pretrial order, R.Vol. II tab 167, in which Defendant designated another twelve witnesses, none of whom were actually called by him at trial.

court referred to Florida law at the close of the case, it was merely stating for the record a ruling it had already made known to the parties some time before. R.Vol. V at 511. Indeed, express confirmation of this point, which Defendant carefully sidesteps in his Reply Brief, is provided by Defendant's own motion and amended motion for judgment n.o.v., both of which begin with the acknowledgment that "[i]mmediately prior to commencing this proceeding, the Court ruled that Florida law was applicable...." R.Vol. II tabs 184, 189.

The only assertions of prejudice, aside from the dubious allegations of disrupted trial strategy in the quoted passages above, relate to the complication of the case by the initial uncertainty about controlling law. Obviously, this point applies with equal force to both sides in any action where choice of law is an issue. Moreover, although Defendant knew well enough to couch his motions in terms of Florida law from the beginning of the case, Defendant does not refer us to any place in the record to demonstrate that he ever expressly sought a definitive determination regarding the law governing the action. Nor did he move for continuance or mistrial on this basis. Finally, Defendant's argument is devoid of any citation to supporting authority for the facially unappealing proposition that a choice of law ruling rendered just prior to trial constitutes reversible error. Under the circumstances, we deem the argument meritless.

### III. Motion to Strike

■ The other pretrial ruling challenged by Defendant is the district court's denial of his motion to strike the factual allegations supporting Plaintiffs' fraud claim. Defendant contended Plaintiffs did not comply with Fed.R.Civ.P. 9(b) in that (1) their allegations of fraud were based on information and belief and (2) their allegations of the requisite wanton, willful, or reckless intentions were conclusory. Allegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief. *See Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990); *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 288–89 (1st Cir.1987); *In re VMS Sec. Litig.*, 752 F.Supp. 1373, 1391–92 (N.D.Ill.1990). Since Plaintiffs' pleadings begin with a lengthy and detailed factual recitation thoroughly setting out the circumstances giving rise to their fraud claims, R.Vol. I tab 30 at 2–6, the fact that the latter also include three brief information-and-belief allegations regarding the intent or purpose of some of Defendant's actions, *see id.* at 8–10, is not a basis for Rule 9(b) relief under the authorities cited. Furthermore, Rule 9(b) provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." In view of this circuit's strict adherence to the relaxed pleading standard expressed in Rule 9(b), *see Phelps v. Wichita Eagle–Beacon*, 886 F.2d 1262, 1270 (10th Cir.1989), Defendant's objection to the conclusory nature of Plaintiffs' allegations of fraudulent intent is meritless.

### IV. Expert Witness Instruction

■ Turning our attention to trial matters, Defendant argues that the district court erred in instructing the jury regarding the proper evaluation of expert witness testimony when, in fact, not one of the three witnesses who testified at trial was actually qualified and offered as an expert.[3] Because Defendant failed to raise a

---

3. The district court instructed the jury as follows:

    Witnesses who by education and experience have become expert in some art, science, profession, or calling, may state an opinion as to a relevant and material matter in which they profess to be expert, and they may also state their reasons for their opinions. You should consider each expert opinion received in this case and give it such weight as you think it deserves.

    If you should decide that the opinion of an expert witness is not based on sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, you may disregard the opinion entirely.

R.Vol. V at 515.

timely objection to the instruction, we review the matter only for patently plain, *prejudicial* error. *See Zimmerman v. First Fed. Sav. & Loan Ass'n,* 848 F.2d 1047, 1054 (10th Cir.1988).

■ To establish the requisite prejudice, Defendant contends that the cited instruction accorded undue weight to the testimony of Michael Thom, whom the jury knew to be Plaintiffs' personal tax attorney. Mr. Thom, who represented Plaintiffs throughout their dealings with Defendant, testified at length regarding the factual circumstances of the parties' transaction, particularly Defendant's initial representations and subsequent failure to deliver thereon. Given the lack of any formal qualification of Mr. Thom as an expert witness and the plainly factual nature of his critical testimony, it is not at all clear how the cited instruction regarding *expert opinions* substantially bolstered Plaintiffs' case in the eyes of the jury. Furthermore, even if the jury lent special credence to Mr. Thom's testimony because of his professional status, there is no reason to suppose it did not likewise view the opposing testimony given by Defendant, who related pertinent details of his legal education, experience, publications, and prominence in the bar at the outset of his testimony. R.Vol. V at 320–21. In anticipation of this point, Defendant merely insists, without any supporting authority, that "[a]s parties, neither Mr. Scheidt [i.e., Plaintiff] nor Mr. Klein [i.e., Defendant] could be construed as experts." Appellant's Brief at 9. Not only does this appear to be an erroneous statement of the law governing the competency of experts,[4] but, more importantly for present purposes, the jury was never instructed so as to distinguish between Defendant and Mr. Thom in this respect. Although the district court should not have instructed the jury regarding the evaluation of nonexistent expert witness testimony, we hold that, under

the circumstances, no reversible error has been established.

### V. Evidence of Fraud

■ Defendant next challenges the adequacy of the evidence underlying the jury's verdict on the fraud claim. In order to demonstrate fraud in the inducement, Plaintiffs had to prove, by a preponderance of the evidence, *see Wieczoreck v. H & H Builders, Inc.,* 475 So.2d 227, 228 (Fla. 1985); *Wynfield Inns v. Edward LeRoux Group, Inc.,* 896 F.2d 483, 491 (11th Cir. 1990), that Defendant knowingly misrepresented a material fact with the intent and effect of inducing Plaintiffs' justifiable and detrimental reliance thereon. *See Lou Bachrodt Chevrolet, Inc. v. Savage,* 570 So.2d 306, 308 (Fla.Dist.Ct.App.1990).

■ The pertinent material representation was established by Plaintiff William Scheidt and his counsel, Mr. Thom, who testified that approximately one month prior to the trial date set for Defendant's group of IME cases, Defendant represented to Plaintiffs through counsel that he either already had, or, with Plaintiffs' financial contribution to the group litigation fund, could readily obtain, numerous witnesses and voluminous documentation to substantiate the mining operation challenged as a sham by the IRS. R.Vol. III at 63–65; R.Vol. IV at 154–61, 221–22; R.Vol. at 502–03, 505–06. As for the falsity of this representation, Plaintiff William Scheidt and Mr. Thom testified that when they traveled to Florida several days prior to the trial date, they found Defendant utterly unable to produce the promised witnesses and documentation and, as Defendant himself admitted, clearly unprepared for trial. R.Vol. III at 66–70; R.Vol. IV at 182–90, 192, 270–71, 300; R.Vol. V at 487.

With respect to the scienter requirement, it must be kept in mind that Defendant's representation was that the witnesses and

---

**4.** The only pertinent circuit decisions we have found uphold the admission of expert testimony related by a party, *see Tagatz v. Marquette Univ.,* 861 F.2d 1040, 1042 (7th Cir.1988) (noting that nothing in Fed.R.Evid. 702 suggests that a party cannot qualify as an expert), or, similarly, the employee of a party, *see Dunn v. Sears, Roebuck*

*& Co.,* 639 F.2d 1171, 1174 (5th Cir.) ("That a witness is an employee of a party does not preclude his qualification as an expert."), *corrected on other grounds,* 645 F.2d 511 (1981); *e.g., Brownlee v. Gay & Taylor, Inc.,* 861 F.2d 1222, 1224–25 (10th Cir.1988).

documents were actually in hand or readily available, not simply that he would try to obtain them. Thus, Defendant himself supplied circumstantial evidence for Plaintiffs when he testified regarding the virtually insurmountable obstacles preventing his promised performance. R.Vol. V at 324–29, 470–73. Similarly, Defendant's admitted lack of trial preparation and his statement after continuance of the trial date to the effect that he had, by virtue of the postponement, accomplished what he had set out to do, support the inference that he never had any intention of producing the evidence he told Plaintiffs their money was buying. R.Vol. IV at 192–93; *see also* R.Vol. IV at 239, 275–76, 281; R.Vol. V at 388–89 (numerous references to Defendant's strategy regarding continuance of the trial date). Moreover, circumstantial evidence of motive can readily be found in the admittedly desperate financial situation of Defendant's IME litigation group. When the prospect of Plaintiffs' contribution appeared just one month before the trial date, Defendant had received no funds from the IME group for six to eight months and had been financing the litigation out of his own pocket for some three to six months. R.Vol. V at 349–50, 443. In light of such evidence, it was not impermissible for the jury to infer that Defendant's misrepresentations were made knowingly, to obtain the funds necessary to keep his insolvent IME litigation afloat while he counted on a continuance of the trial to postpone any call on the present obligations he assumed with respect to Plaintiffs.

The requisite reliance was also established by Plaintiff William Scheidt and Mr. Thom. They testified that Plaintiffs joined Defendant's litigation group to take advantage of the witnesses and documents Defendant represented he would make available for Plaintiffs' case, then only one month away from trial. R.Vol. III at 63–66, 70–71; R.Vol. IV at 142–63, 198–99.

Defendant argues that Plaintiffs did not prove *detrimental* reliance, or injury. Defendant's argument overlooks the plain fact that, based on his misrepresentation, Plaintiffs parted with $30,000. R.Vol. III at 65, 70–72; R.Vol. IV at 163–64, 293.

We must view the record in the light most favorable to Plaintiffs, *see Comcoa, Inc. v. NEC Tels., Inc.,* 931 F.2d 655, 663 (10th Cir.1991), and also bear in mind that the jury "has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact," *Kitchens v. Bryan County Nat'l Bank,* 825 F.2d 248, 251 (10th Cir.1987). Under these principles, we conclude that the record contains the substantial evidence required to support the jury's verdict. *See Comcoa, Inc.,* 931 F.2d at 663.

### VI. Evidence Relating to Plaintiff Wanda Scheidt

■ Defendant also challenges the sufficiency of the evidence supporting the judgment in favor of Plaintiff Wanda Scheidt. Mrs. Scheidt was under care for both a heart attack and a stroke and was not able to attend trial. R.Vol. III at 48. As a result, Defendant moved for a directed verdict below on the ground that the evidence did not establish her personal involvement in the transaction giving rise to Plaintiffs' claims. R.Vol. IV at 303–04; R.Vol. V at 510–11. We agree with the district court's summary rejection of this contention. Although the trial testimony does reflect the more active role assumed by Plaintiff William Scheidt, the record is nevertheless replete with references to joint action taken by or on behalf of Plaintiffs in connection with the operative events in this case, including their filing of the Tax Court action ultimately joined with Defendant's IME litigation group, R.Vol. III at 60–61; R.Vol. IV at 134–35, their retention of Mr. Thom with respect to the Tax Court proceedings on their joint returns, R.Vol. IV at 134–35, Mr. Thom's agreement with Defendant on Plaintiffs' behalf that they would participate in Defendant's IME group, *id.* at 163, Mr. Thom's request that Defendant enter an appearance on Plaintiffs' behalf in the Tax Court, *id.* at 161, and the $30,000 loss Plaintiffs sustained as a result of Defendant's nonperformance, *id.* at 293.

*VII. Defendant's Requested Instruction*

▮ Next, Defendant argues, in summary fashion and without citation to any supporting legal authority, that the district court erred in refusing his oral request for a jury instruction to the effect that, since the $30,000 payment made by Plaintiffs was simply a contribution to the IME litigation fund, Defendant was not obligated to return the money after Plaintiffs terminated their relationship with him. Plaintiffs oppose this argument on both procedural and substantive grounds, pointing out that (1) Defendant never filed a written request for such an instruction, as required by court order, *see also* Fed.R.Civ.P. 51 ("any party may file written requests that the court instruct the jury on the law as set forth in the requests") and (2) the rejected instruction amounted to nothing more (or less) than an unqualified endorsement of Defendant's position on the primary disputed issue of the case, i.e., whether Plaintiffs' $30,000 payment was induced by Defendant's fraudulent representations regarding evidence he possessed, or was merely a retainer for his future services. We conclude this assignment of error is meritless.

*VIII. Punitive Damages*

▮ Finally, Defendant contends that the award of punitive damages was both improper on the evidence presented at trial, which in Defendant's view failed to provide a "reasonable basis for recovery of such damages," Fla.Stat. ch. 768.72, and, in any event, excessive in light of the presumption, set out in Fla.Stat. ch. 768.-73(1)(a), (b), against any award of punitive damages over three times the amount of compensatory damages. The first contention is effectively precluded by our affirmance of the judgment for compensatory damages awarded on Plaintiffs' fraud claim. *See Lou Bachrodt Chevrolet, Inc.,* 570 So.2d at 308 (claim of fraud sufficient to support verdict for compensatory damages is perforce sufficient to support claim for punitive damages). The second conten-

tion is undercut by at least two separate considerations, one substantive, the other procedural. The present action for common law fraud does not appear to fall within the explicitly delimited scope of section 768.73(1), which restricts the permissible amount of punitive damages only in "civil action[s] based on negligence, strict liability, products liability, misconduct in commercial transactions, professional liability, or breach of warranty," nor does Defendant cite us to any authority supporting its application here. More importantly, Defendant never raised the issue below, despite ample opportunity to do so, both in his request for remittitur [5] and following the district court's orders conditionally granting and then effecting the requested reduction with respect to compensatory damages without any adjustment of punitive damages. Under the circumstances, we deem the point waived. *See generally Hicks v. Gates Rubber Co.,* 928 F.2d 966, 970 (10th Cir.1991).

*Conclusion*

We have reviewed all the points of error raised by Defendant and hold them to be without merit. Accordingly, the judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

---

**5.** Prior to remittitur, the damage award did not implicate section 768.73(1), since the jury awarded Plaintiffs compensatory damages in excess of the punitive damage figure.