**BOILERMAKER–BLACKSMITH
NATIONAL PENSION FUND,
et al., Plaintiffs,**

v.

**Theodore G. GENDRON,
et al., Defendants.**

**No. 98–2317–KHV.**

United States District Court,
D. Kansas.

Aug. 20, 1999.

Charles R. Schwartz, Blake & Uhlig, P.A., Kansas City, KS, Mark A. Kistler, Yonke, Arnold, Newbold & Regan, P.C., Kansas City, MO, for defendants.

VRATIL, District Judge.

This matter comes before the Court on *Defendants Theodore G. Gendron, Jon–Michael Gendron And Northeast Service And Inspections, Inc. Motion To Dismiss Counts I and II of Plaintiffs' Amended Complaint, Or, In The Alternative. To Change Venue* (Doc. # 23) filed March 16, 1999, and *Plaintiffs' Motion To Strike Defendants' Reply to Plaintiffs' Response in Opposition To Defendants' Motion To Dismiss Or Transfer Venue* (Doc. # 38) filed May 28, 1999. For the reasons set forth below, the Court finds that defendants' motion should be overruled, and that plaintiffs' motion should be sustained in part and overruled in part.

### Motion to Dismiss Standard

A 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). All well-pleaded factual allegations in the complaint must be accepted as true, *see Ash Creek Mining Co. v. Lujan,* 969 F.2d 868, 870 (10th Cir. 1992), and viewed in the light most favorable to the nonmoving party.

### Motion To Transfer Venue Standard

Under 28 U.S.C. § 1404(a), the Court may transfer a case to any district or division where it might have been brought for "the convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a).

In evaluating a motion to transfer, the Court considers the following factors:

the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1516 (10th Cir.1991) (quoting *Texas Gulf Sulphur Co. v. Ritter,* 371 F.2d 145, 147 (10th Cir.1967)).

The decision whether to grant a motion to transfer is within the sound discretion of the district court. *See Scheidt v.*

*Klein,* 956 F.2d 963, 965 (10th Cir.1992). The moving party has the burden of demonstrating that a suit should be transferred. *Cook v. Atchison, Topeka & Santa Fe Ry. Co.,* 816 F.Supp. 667, 668 (D.Kan. 1993). The Court must give great weight to plaintiff's choice of forum. *KCJ Corp. v. Kinetic Concepts, Inc.,* 18 F.Supp.2d 1212, 1214 (D.Kan.1998). "Unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Scheidt,* 956 F.2d at 965 (further citations omitted).

### Background Facts

Plaintiffs bring this action pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 and 1145, to collect fringe benefit contributions allegedly due and owing from defendants to plaintiffs. Plaintiffs are multi-employer benefit plans covered by ERISA. Plaintiffs provide pension, health insurance coverage, and benefits to employees of employers who are bound to collective bargaining agreements with the International Brotherhood of Boilermakers. The collective bargaining agreements require employers to make monthly fringe benefit contributions to plaintiffs. The monthly contributions are based upon the number of hours of covered work the employees perform. The employers' obligation to contribute to the funds arises from a continuing contractual relationship, and the employers' contribution obligation accrues each month as the underlying debt becomes due. Plaintiffs administer the funds in Kansas City, Kansas. Plaintiffs allege that defendant Tank Maintenance, Inc., a New Jersey Corporation, signed a collective bargaining agreement which required monthly contributions to each of the plaintiff funds.

Plaintiffs previously obtained a judgment against Tank Maintenance for failure to make fringe benefit contributions required from September 1993 to September 1996. *See Boilermaker–Blacksmith Nat'l Pension Fund v. Tank Maintenance & Tech., Inc.,* 1997 WL 458411, No. 96–2161–JWL (D.Kan. July 18, 1997) (*Tank Main-*

*tenance I* ). In that case, after counsel for Tank Maintenance withdrew, Jon–Michael Gendron, president of Tank Maintenance, filed a pro se motion for an extension of time to respond to plaintiffs' motion for summary judgment. Citing the general rule that a corporation can appear in court only by an attorney, the court struck the pro se motion. The court acknowledged that some jurisdictions have recognized exceptions to the general rule where, for example, an individual who is the alter ego of a corporation or an agent is also a party. It also observed that no court in the Tenth Circuit had recognized any such exception. Further, Gendron was not a named party and Tank Maintenance had not pled facts to support the alter ego exception. Thus the court found that the corporation could not appear pro se through Gendron. It therefore granted plaintiffs' uncontested motion for summary judgment, and entered judgment against Tank Maintenance in the amount of $233,219.02.

In this suit, plaintiffs allege two separate counts. Count I covers the period from September 1993 to September 1996, and alleges that Theodore G. Gendron, Jon–Michael Gendron and Northeast Service and Inspections, Inc. are "alter egos" of Tank Maintenance. Plaintiffs allege that these "alter ego" defendants are liable to plaintiffs for the debts which Tank Maintenance incurred under the collective bargaining agreement and ERISA. Plaintiffs also allege that the alter ego defendants breached the collective bargaining agreements independent of Tank Maintenance's breaches. In Count II, which covers the period from October 1996 to the present, plaintiffs allege that all defendants breached the collective bargaining agreement and violated ERISA, and are liable to plaintiffs for delinquent contributions.

Defendants ask the Court to dismiss Count I for lack of subject matter jurisdiction or, in the alternative, on the grounds that plaintiffs "are improperly attempting to split their cause of action," and there-

fore, the allegations in Count I fail to state a claim upon which relief can be granted. Defendants further ask the Court to dismiss Counts I and II because the Court lacks personal jurisdiction over them. In the alternative, defendants move the Court to transfer venue to the United States District Court for the District of New Jersey on the grounds of *forum non conveniens*.

## ANALYSIS

### I.  *Subject Matter Jurisdiction*

Relying on *Peacock v. Thomas,* 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996), defendants assert that the Court lacks subject matter jurisdiction over Count I. In *Peacock,* plaintiff brought a class action suit against his former employer, Tru–Tech, Inc., and its sole director, majority shareholder and creditor, Peacock, seeking benefits under the Tru–Tech pension plan. The district court found that Tru–Tech breached its fiduciary duty and entered judgment against it, but found that the individual defendant was not a fiduciary and dismissed the claims against him. Tru–Tech appealed, the Eighth Circuit affirmed, and plaintiff tried unsuccessfully to collect the judgment. Plaintiff therefore sued Peacock again, claiming that Peacock had conspired to drain Tru–Tech's assets while the first case was on appeal. Plaintiff asked the court to pierce the corporate veil and hold Peacock personally liable for the first judgment. The district court found that Tru–Tech and Peacock were alter egos and further found that it would be inequitable to allow misuse of the corporate form to avoid ERISA obligations. The district court therefore entered judgment against Peacock for the amount of the first judgment.

Peacock appealed, arguing that the district court had no jurisdiction. The Eight Circuit affirmed, but the Supreme Court reversed. The Supreme Court held that the allegations in the second case did not state an ERISA claim and the district court had no independent basis for federal jurisdiction. The Supreme Court stated that "[e]ven if ERISA permits a plaintiff to pierce the corporate veil to reach a defendant not otherwise subject to suit under ERISA, [plaintiff] could invoke the jurisdiction of the federal courts only by independently alleging a violation of an ERISA provision or term of the plan." 516 U.S. at 354, 116 S.Ct. 862. Noting that the second suit was a new action based on theories of relief that could not have existed at the time the court entered judgment in the first suit, the Supreme Court also found that the district court did not have ancillary jurisdiction over the second lawsuit.

Defendants assert that in this case, plaintiffs' claims under Count I are an attempt to collect the judgment entered against Tank Maintenance in *Tank Maintenance I.* They argue that under *Peacock,* the Court lacks ancillary jurisdiction to impose on a person not already liable an obligation to pay an existing federal judgment. Plaintiffs respond that this suit is not an attempt to collect the prior judgment in *Tank Maintenance I.* They point out that Count I does not refer to the judgment in *Tank Maintenance I.* Rather, Count I is framed as an action under ERISA §§ 502 and 515 to hold the Gendrons and Northeast Services liable as alter egos for contribution obligations that they allegedly incurred while operating under the name of Tank Maintenance, Northeast Services and other aliases.

> Section 515  provides:
> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Defendants assert that plaintiffs do not claim that they are parties to any collective bargaining agreement that would impose upon them an obligation to contribute to the plaintiff funds. Thus, any liability of Northeast and the Gen-

drons under Section 515 would arise only if they are the "employer" as defined by ERISA. Defendants assert that the record contains no evidence that the individual defendants signed an agreement, and thus any liability on their part must be based on their "alter ego" relationship with Tank Maintenance. Defendants cite *Central States Pension Fund v. Central Transport, Inc.*, 85 F.3d 1282, 1286–87 (7th Cir.1996), for the proposition that "veil-piercing" "is dead" after *Peacock.*

■ Subsequent cases have read *Peacock* narrowly, as simply holding that ERISA does not provide independent subject matter jurisdiction "for imposing liability for an extant ERISA judgment against a third party." 516 U.S. at 353, 116 S.Ct. 862. Thus in *Greater Kansas City Laborers Pension Fund v. Superior Gen. Contractors*, 104 F.3d 1050 (8th Cir. 1997), the plaintiff funds alleged that a successor corporation was the alter ego of a corporation which had signed a collective bargaining agreement requiring fund contributions. Plaintiffs argued that the alleged alter egos "should be held jointly and severally liable to the plaintiffs for any contributions due." *Id.* at 1053. The Eighth Circuit asserted subject matter jurisdiction over the alter ego claims, while noting the *Peacock* holding "that a plaintiff may not attempt to pierce the corporate veil to enforce an ERISA judgment against an individual not liable for the underlying ERISA violation." *Id.* at 1055 n. 6; *see also Thomas, Head & Greisen Employees Trust v. Buster*, 95 F.3d 1449, 1454 (9th Cir.1996) ("Because [plaintiff] is not attempting to establish the [third parties'] liability for the original judgment, we find *Peacock* inapposite."). Adopting the reasoning of the Eight Circuit in *Greater Kansas City Pension Fund,* this Court finds that it has subject matter jurisdiction over the claims in Count I.[1]

## II. *"Claim Splitting"*

■ Defendants also assert that the Court should dismiss Count I as an "improper attempt to split the plaintiffs' cause of action." *Suggestions In Support of Defendants' Motion to Dismiss Counts I and II Of Plaintiffs' Amended Complaint, Or, In The Alternative, To Change Venue* (Doc. # 24) filed March 16, 1999, p. 7. Defendants assert that in *Tank Maintenance I,* plaintiffs had a fair opportunity to litigate the alter ego claims against the individual defendants but chose not to do so. *See Central States Pension Fund,* 85 F.3d at 1288 (most telling evidence of funds' awareness that third party relationship with company was not that of "alter ego" is that funds did not name third party in original suit). Defendants assert that in *Tank Maintenance I,* plaintiffs stymied the efforts of Tank Maintenance to appear pro se by affirmatively arguing that Jon–Michael Gendron was *not* an alter ego or agent of Tank Maintenance. *See Defendants' Suggestions in Support,* Ex. 3. The Court disagrees. Plaintiffs in that case did not address whether Gendron was (or was not) an alter ego of Tank Maintenance. They merely pointed out that Tank Maintenance was the only defendant and thus the rule that a party who is also an agent may in some circumstances be allowed to represent a defendant corporation did not apply. *See id.*

Defendants also argue, however, that "[i]n the pending matter, the plaintiffs raise the same allegations against the Gendrons and Northeast which Judge Lungstrum has previously found to support a judgment against Tank Maintenance." *Defendants' Suggestions In Support* (Doc. # 24), p. 8. Defendants assert that because the individual defendants were not parties in *Tank Maintenance I,* they might present exculpatory evidence with the result that this Court could determine that nei-

---

1. Although the Court might alternatively find that it has supplemental jurisdiction over Count I based on its unchallenged subject matter jurisdiction over the Count II ERISA claims against all of the defendants, the Court does not read Count I as asserting any state law claims to enforce the judgment in *Tank Maintenance I.*

ther the Gendrons or Tank Maintenance violated ERISA, a result that would be contrary to the decision in *Tank Maintenance I*. On the other hand, according to defendants, if this Court were to decide that the individual defendants were adequately represented in the first action and are bound by that judgment, then the only issue remaining in this action would be whether the individual defendants are alter egos of Tank Maintenance. If they are, defendants argue that this action would be nothing more than a suit to collect on the underlying judgment, and thus under *Peacock* this Court has no subject matter jurisdiction. The Court, however, has already found that it has—at the least— supplemental jurisdiction over Count I. This argument therefore fails.[2]

Defendants cite only one case, *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 360 (10th Cir.1996), in arguing that plaintiffs are splitting a cause of action. They reason that because plaintiffs claim that defendants are all one and the same, and the allegations of Count I are the same as those in the original suit, the relief would necessarily be the same.

■ Plaintiffs point out, however, that defendants are essentially arguing res judicata or claim preclusion, the doctrine under which a final judgment on the merits of an action precludes the parties *or their privies* from re-litigating claims that were or could have been raised in that action. *United States v. Lacey*, 982 F.2d 410, 412 (10th Cir.1992). Plaintiffs claim that all defendants are jointly liable, as joint obligors, for the same contribution obligations created under the same collective bargaining agreement. "But claims

against joint obligors are generally regarded as separate and distinct for res judicata purposes." *Tavery v. United States*, 897 F.2d 1032, 1033 (10th Cir.1990). "When a litigant files consecutive lawsuits against separate parties for the same injury, the entry of a judgment in the prior action does not bar the claims against other potentially liable parties." *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367 (2d Cir.1995). As plaintiffs further point out, defendants could assert that they are in privity with Tank Maintenance in order to attempt a res judicata argument. But, in any event, as between a corporation and individual shareholders or directors, privity for res judicata purposes exists only where the individuals are sued in their representative capacity. Here, the individual defendants are sued as individuals, and defendants have not alleged facts which establish privity. *See United States v. Gurley*, 43 F.3d 1188, 1197 (8th Cir.1994).

■ In short, Count I claims that the collective bargaining agreement obligated the Gendrons and Northeast to make ERISA payments. To some degree, that claim is based on an alter ego or common control argument. In order to prevail on that theory, plaintiffs will have to prove that relationship. Although defendants attempt to characterize the claims in Count I as an attempt to enforce the judgment in *Tank Maintenance I*, Count I does not include any factual allegations about the judgment in *Tank Maintenance I* and thus plaintiffs could not attempt to use Count I to enforce that judgment.

---

2. Defendants argue that in *Tank Maintenance I* plaintiffs took the position that Tank Maintenance did not have any alter egos (thus forcing the court to enter judgment by default) and that now, after laying in wait for more than a year to get past the deadline for motions to set aside the judgment under Rule 60(b), Fed.R.Civ.P., plaintiffs have disclosed to the Court that Tank Maintenance does have alter egos. Defendants assert that plaintiffs are thus taking inconsistent positions and should be judicially estopped from doing so.

As noted above, defendants have pointed to no evidence in support of the assertion that plaintiffs took any position concerning the existence of alter egos in *Tank Maintenance I*. Further, the 10th Circuit has disapproved of the use of the doctrine of judicial estoppel. *See Smith v. Midland Brake*, 138 F.3d 1304 (1998), *rev'd on rehearing*, 180 F.3d 1154 (1999) (on rehearing en banc the Tenth Circuit did not address the judicial estoppel issue).

The Court notes that plaintiffs may seek to invoke collateral estoppel (issue preclusion) to establish certain aspects of their claim. If so, the question whether the Gendrons and Northeast are bound by certain findings in *Tank Maintenance I* can be addressed at that point. The question whether those defendants had a full and fair opportunity to litigate such issues in *Tank Maintenance I* is not before the Court at this time.

### III. Personal Jurisdiction

29 U.S.C. § 1132(e)(2) provides:

Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

The Gendrons and Northeast do not appear to dispute that plaintiffs properly served process under this statute. *See Boilermaker–Blacksmith Nat'l Pension Fund v. Nevada Boiler Works, Inc.,* No. 96–2168–GTV, 1997 WL 94241 *4 (D.Kan. Feb. 27, 1997) (citing *McCracken v. Automobile Club of S. Cal., Inc.,* 891 F.Supp. 559, 561 (D.Kan.1995) (interpreting § 1132(e)(2) as authorizing nationwide service of process)). They argue, however, that the Court does not have personal jurisdiction because they do not have sufficient contacts with this forum and/or that the national service provision is an inadequate mechanism to satisfy due process requirements. *See Nevada Boiler Works,* 1997 WL 94241 at *4. The Gendrons and Northeast assert that their only connection to the State of Kansas is through the alleged obligation of Tank Maintenance to the plaintiff funds, which are administered in the state of Kansas. Defendants argue that it would be unfair to require them to travel to Kansas City to defend claims which are based solely on allegations that they are alter egos of Tank Maintenance.

The court in *Nevada Boiler Works* set forth the appropriate analysis:

In the context of statutes authorizing nationwide service of process, federal courts must focus on the Due Process Clause of the Fifth Amendment. *U.S. Telecom v. Hubert,* 678 F.Supp. 1500, 1506 (D.Kan.1987). Although the Tenth Circuit has not addressed the issue, every circuit court confronting national service statutes has held that minimum contacts with the United States are sufficient to justify the assertion of personal jurisdiction. *See, e.g., Bellaire Gen. Hosp. v. Blue Cross Blue Shield,* 97 F.3d 822, 826 (5th Cir.1996); *United Liberty Life Ins. Co. v. Ryan,* 985 F.2d 1320, 1330 (6th Cir.1993); *United Elec. Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1085 (1st Cir.1992); *Diamond Mortgage Corp. v. Sugar,* 913 F.2d 1233, 1244 (7th Cir.1990); *Go–Video, Inc. v. Akai Elec. Co.,* 885 F.2d 1406, 1414–16 (9th Cir.1989); *Texas Trading v. Federal Republic of Nigeria,* 647 F.2d 300, 314–15 (2d Cir.1981). The overwhelming majority of cases in this district also have employed a national contacts standard. *See, e.g., McCracken,* 891 F.Supp. at 561; *In re Atteberry,* 159 B.R. 1, 5 (D.Kan.1993); *Monarch Normandy v. Normandy Square,* 817 F.Supp. 899, 902 (D.Kan.1993); *Hubert,* 678 F.Supp. at 1507–08. *But see Wichita Fed. Sav. & Loan Ass'n v. Landmark Group, Inc.,* 657 F.Supp. 1182, 1194–95 (D.Kan.1987).

*Nevada Boiler Works,* 1997 WL 94241 at *4.

This Court will follow the majority of courts and hold that only minimum contacts with the United States are necessary to exercise personal jurisdiction over a defendant in a suit involving a national service of process statute. Thus plaintiffs have established personal jurisdiction over all defendants in this case.

### IV. Transfer of Venue

Defendants argue that this Court should transfer venue to the District of New Jer-

sey under 28 U.S.C. § 1404(a). They contend that the fact witnesses concerning the alter ego claims reside in New Jersey, that all defendants are located in New Jersey, and that the documents, including the employee and corporate records, are located in New Jersey.[3]

Plaintiffs argue that ERISA's liberal venue provision, 29 U.S.C. § 1132(e)(2), clearly contemplates suit in the forum in which an employee benefit plan is administered. *See Nevada Boiler Works*, 1997 WL 94241. Further, they point out that in their initial *Suggestions in Support*, defendants failed to identify who the witnesses are or to show that the witnesses are unwilling to travel to Kansas for a trial.[4] *See id.*

A party moving to transfer a case bears the burden of demonstrating that the existing forum is inconvenient. *Chrysler Credit Corp.*, 928 F.2d at 1515. In evaluating such motions, district courts enjoy broad discretion and must make individualized determinations of convenience and fairness. *Id.* (citations omitted). Unless the evidence is strongly in favor of the movant, however, plaintiffs' choice of forum rarely should be disturbed. *Scheidt*, 956 F.2d at 965.

Defendants' contention that the relevant documents are located in New Jersey does not tilt the balance in favor of transfer. The records can be shipped to Kansas for trial with minor inconvenience and cost. *See id.* at 966 (minor burden of transporting relevant documents to trial site does not warrant venue transfer). Further, as plaintiffs point out, some relevant documents may be found in plaintiffs' files in Kansas. Defendants claim that many witnesses live in New Jersey and are not subject to the subpoena power of this court. But defendants have not submitted information about the relative significance of these witnesses' testimony; more importantly defendants have not shown that such witnesses would be unwilling to come to Kansas City voluntarily, making compulsory process necessary. *See id.*

The Court acknowledges that it is inconvenient for defendants to litigate this case in Kansas. Disturbing plaintiffs' chosen venue should be more difficult in an ERISA case, however, because the special venue provision allows a case to be brought in any district where the plan is administered.

After careful consideration, the Court finds that defendants have not established sufficient facts to warrant disturbing plaintiffs' choice of forum.

**IT IS THEREFORE ORDERED** that *Defendants Theodore G. Gendron, Jon–Michael Gendron And Northeast Service And Inspections, Inc. Motion To Dismiss*

3. Defendants also assert that because plaintiffs are currently attempting to collect on the judgment in *Tank Maintenance I* in New Jersey federal district court, it would not prejudice plaintiffs to litigate this case there as well. But an enforcement action is far different from a case such as this, and the Court is not swayed by this argument. *Cf. Boilermaker–Blacksmith Pension Fund v. Boiler & Mech. Servs., Inc.*, 1995 WL 584500, No. 95–2289–JWL (D.Kan. Sept. 27, 1995) (transferring venue in ERISA case where defendants did not do business in or have any contact with Kansas, key witnesses and relevant documents were in Colorado, and plaintiffs were concurrently pursuing an ERISA action in Colorado against an alter ego company signatory).

4. In their reply defendants do attach affidavits which indicate that most employees for whom plaintiffs seek delinquent contributions reside in New Jersey or bordering states. They also submit affidavit evidence that defendants' bank accounts are located in New Jersey and that the collective bargaining agreement was negotiated in New Jersey. In *Plaintiffs' Motion To Strike Defendants' Reply to Plaintiffs' Response in Opposition To Defendants' Motion To Dismiss Or Transfer Venue* (Doc. # 38) filed May 28, 1999, plaintiffs assert that the Court should strike defendants' reply as containing issues and facts not in its original suggestions in support of their motion. Under D. Kan. Rule 7.1, a party is prohibited from raising new argument and issues in a reply because the opposing party has not had an opportunity to address the issues. *See Martin v. Kansas*, 996 F.Supp. 1282, 1295 (D.Kan.1998). To the extent that defendants injected new facts and new issues in the reply, the Court strikes those portions of the reply.

*Counts I and II of Plaintiffs' Amended Complaint, Or, In The Alternative, To Change Venue* (Doc. #23) filed March 16, 1999, be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that *Plaintiffs' Motion To Strike Defendants' Reply to Plaintiffs' Response in Opposition To Defendants' Motion To Dismiss Or Transfer Venue* (Doc. #38) filed May 28, 1999, be and hereby is **SUSTAINED IN PART AND OVERRULED IN PART.**