**Kelly R. BAILEY, Plaintiff,**

v.

**UNION PACIFIC RAILROAD COMPANY, Defendant.**

**No. CIV.A. 05–F–038(BNB).**

United States District Court, D. Colorado.

April 6, 2005.

James L. Cox, Jr., Rossi, Cox & Vuci-novch, Aurora, CO, for Plaintiff.

Steven E. Napper, Union Pacific Railroad Company Law Department, Denver, CO, for Defendant.

## ORDER GRANTING MOTION TO TRANSFER

FIGA, District Judge.

### BACKGROUND

Plaintiff Kelly R. Bailey claims he suffered cumulative trauma to the spine due to the negligence of his employer, Defendant Union Pacific Railroad Company, while employed as a trainman for the railroad since February 1978. Complaint, ¶¶ 7–10, 12, 15. Plaintiff avers a second negligence claim against Union Pacific based on an incident occurring on July 14, 2003. While a train conductor en route from North Platte, Nebraska to Cheyenne, Wyoming, Mr. Bailey contends he injured himself while removing a piece of channel iron that had fallen through the wood plank deck of a train car and lodged between the axles of the car. *Id.*, ¶¶ 28–29.

The accident is alleged to have been caused by various alleged failures by the railroad to follow applicable regulations and other breaches of the duty of ordinary care. *Id.*, ¶¶ 30–31. Mr. Bailey brings suit against the railroad under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–69.

The railroad moves to transfer this case pursuant to 18 U.S.C. § 1404(a) to the United States District Court for the District of Nebraska (Dkt.# 5). In support of its motion, the railroad asserts plaintiff is a Nebraska resident, the accident complained of occurred in Nebraska, the bystander witnesses are Nebraska-based, railroad records pertaining to plaintiff's claims are maintained in its North Platte, Nebraska office and several medical providers who have treated plaintiff are from Nebraska. Affidavit of Sharon Forster Russell, attached to Memorandum Brief.

Plaintiff's response points out that his primary medical treatment has been provided by Dr. Jeffrey Kleiner of Aurora, Colorado, who performed spinal surgery on him at Aurora Medical Center–South in Aurora. Response at 2. Plaintiff goes on to insist that the services of the Nebraska providers of medical services to him were of limited duration and constituted limited treatment. *Id.* at 2–5. Plaintiff's response also emphasizes that Union Pacific does substantial business in Colorado and that under FELA, particularly 45 U.S.C. § 56, venue is proper in any district wherein the defendant is doing business. He argues with citation to case law that this statutory choice accorded to FELA plaintiffs should not be lightly disturbed. Response at 7–8.

## APPLICABLE LEGAL STANDARDS

Title 28 U.S.C. § 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Venue is proper in Colorado pursuant to 28 U.S.C. § 1391(b) due to federal question jurisdiction and the regional office maintained here by defendant. This case could have also been brought in the District of Nebraska, where Union Pacific also does business.

█ A district court has discretion as to whether to grant a change of venue pursuant to § 1404(a). *Scheidt v. Klein,* 956 F.2d 963, 965 (10th Cir.1992). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). The party seeking transfer bears the burden of establishing that the existing forum is inconvenient. *Scheidt, supra,* 956 F.2d at 965; *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1515 (10th Cir.1991). Unless the balance of the inconvenience is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed. *Scheidt,* 956 F.2d at 965.

█ The following non-exclusive factors are pertinent in determining whether a transfer is appropriate under § 1404(a):

... [T]he plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is

obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit,* 928 F.2d at 1516, citing *Texas Gulf Sulphur Co. v. Ritter,* 371 F.2d 145, 147 (10th Cir.1967). FELA cases are not exempt from the scope of § 1404(a) notwithstanding its broad venue provision. *See Ex parte Collett,* 337 U.S. 55, 60–61, 69 S.Ct. 944, 93 L.Ed. 1207 (1949).

■ Plaintiff's preference for pursuing his action in the District of Colorado is entitled to little weight. It is neither his home nor the place of the accident. *See, e.g., Chicago, Rock Island & Pac. R.R. v. Igoe,* 220 F.2d 299, 304 (7th Cir.1955); *Hardaway Constructors, Inc. v. Conesco Industries, Ltd.,* 583 F.Supp. 617, 620 (D.N.J.1983); *Cuzzupoli v. Metro–North Commuter R.R.,* 2003 WL 21496879 *2 (S.D.N.Y. June 30, 2003) ("Because plaintiff in this [FELA] case is a resident of Connecticut and the events underlying the litigation occurred in Connecticut, I find that little weight should be afforded to plaintiff's choice of this New York forum"). Also, there is no assertion that plaintiff's alleged cumulative injury occurred even in part while he was working on the railroad in Colorado. Moreover, the location and convenience of counsel is a not a relevant factor. *In re Horseshoe Entertainment,* 337 F.3d 429, 434 (5th Cir.2003), *cert. denied,* 540 U.S. 1049, 124 S.Ct. 826, 157 L.Ed.2d 698 (2003); *Solomon v. Continental American Life Ins. Co.,* 472 F.2d 1043, 1047 (3rd Cir.1973); *S.E.C. v. Kasirer,*

2005 WL 645246 *2 (N.D.Ill., Mar. 25, 2005).

## ANALYSIS

■ The balance of factors to be considered in a § 1404(a) determination dictate that this case be transferred to the United States District Court for the District of Nebraska. Here, the convenience of the witnesses and the availability of compulsory process to insure the attendance of witnesses are the most compelling factors. *See e.g., Sackett v. Denver and Rio Grande Western R.R. Co.,* 603 F.Supp. 260, 261 (D.Colo.1985). Nebraska is the location of a number of fact and medical witnesses. While the railroad asserts that eight of its employees are fact witnesses who live and/or work in North Platte, it identifies only three, Lewey D. Sukraw, Thomas Maliszewski and Frank Interholziner. Affidavit of Sharon Forster Russell, ¶ 6. Union Pacific contends that the witnesses' attendance at trial would mean three days of lost work time for each of them. *Id.,* ¶ 8.

The railroad also lists the following Nebraska-based medical or vocational services to plaintiff:

(1) Jerrard Hertzler, M.D., an Omaha neurologist who apparently treated plaintiff for a "minor" head injury as a result of a fall in April 1992. Response at 4.

(2) Garry Vandewege, M.D., who apparently also saw the plaintiff for his 1992 head injury. *Id.*

(3) Gary Conell, M.D., plaintiff's family physician, who plaintiff saw on July 16, 2003, two days after the accident. Dr. Conell took x-rays, prescribed medication and subsequently ordered nerve latency testing and an MRI, both of which were performed that month. *Id.* at 3.

(4) Sue Loose, M.S., C.R.C., a vocational rehabilitation consultant from Omaha, who is referred to by plaintiff as "an expert witness hired by Defendant to provide vocational rehabilitation services and testimony in this matter." *Id.* at 4.

(5) Douglas States, M.D., apparently a general practitioner who practices with Dr. Conell and who treated plaintiff on four occasions in 1997 to mid–1998 for muscle problems. *Id.* at 5.

Of these Nebraskans, it is not clear which of them are "will call" as opposed to possible "may call" witnesses in the case. Yet it is apparent that some of them credibly possess relevant information that may be useful in evaluating at trial such issues as whether the railroad was negligent with respect to the July 14, 2003 accident and the nature and extent of plaintiff's injuries that resulted from the accident. Some of them also appear to be able to testify as to plaintiff's preexisting injuries and treatment that bear on whether the railroad had engaged in prior acts of negligence and whether plaintiff suffered from cumulative work-related trauma to the spine as he contends. Even if some of these Nebraska physicians did not provide long-term treatment of plaintiff, their observations and diagnosis of him at discrete times may well prove probative of some of the issues in dispute. These physician witnesses appear to be beyond defendant's control. Living in Nebraska, they are beyond 100 miles of the federal courthouse and thus not subject to a trial subpoena. *See* F.R.Civ.P. 45(b)(2).

Defendant refers to some potential Wyoming witnesses, including plaintiff's supervisor, William R. Lake, and Vincent Ross, M.D., who treated plaintiff in Cheyenne the day after the accident. These potential witnesses, who are neither from Colorado nor Nebraska, have no impact on the transfer analysis. There is no indication from either party that the Wyoming witnesses are subject to a Colorado trial subpoena or would be inconvenienced by testifying at trial in either a Colorado or Nebraska federal courtroom. Also, the location of plaintiff's files are of minimal significance. There is no indication that those files are voluminous or difficult to send to Colorado for use at trial.

On plaintiff's side of the ledger is essentially his choice of forum and his principal expert witness, who is also his treating physician, Dr. Jeffrey Kleiner. Defendant attempts to emphasize that Dr. Kleiner regularly acts as a treating physician for FELA plaintiffs. He supposedly has a number of his FELA patients referred to him through their counsel. Memorandum Brief at 2–3; Reply at 3. That alleged "fact," albeit somewhat contested by plaintiff (*see* Response at 5–6, 14–15), even if true would not render Dr. Kleiner's inconvenience in testifying in Nebraska any less relevant for the § 1404(a) analysis. Dr. Kleiner is a physician who rendered what from all indications appears to have been *bona fide* medical services to plaintiff in Colorado. These services include the microdiscectomy and fusion surgery performed on plaintiff in Aurora, Colorado. Nothing suggests that plaintiff retained Dr. Kleiner principally to bolster support for maintaining venue in this district.

These facts and arguments nevertheless do not tip the scales away from the change of venue or this Court's finding that defendant has met its burden under § 1404(a). Dr. Kleiner, however important he may be to this case, is but one physician of several who possess relevant information. While the Tenth Circuit has recognized that the location of an expert witness is a factor to

consider when conducting a § 1404(a) balancing test (*see Palace Exploration Co. v. Petroleum Dev.*, 316 F.3d 1110, 1122 (10th Cir.2003)), an after-the-fact selection of a medical provider turned expert witness by a nonresident litigant is far from controlling. *See, e.g., Whigham v. CSX Transp., Inc.*, 2005 WL 441356 *1 (E.D.Pa., Feb. 23, 2005), *Speed v. Omega Protein, Inc.*, 246 F.Supp.2d 668, 674 (S.D.Tex.2003). Dr. Kleiner is the only Coloradoan contemplated to testify. With the exception of a couple of Wyoming residents, the rest of those anticipated to testify in this case live and work in Nebraska. While the bystander witnesses are railroad employees who may well be compensated for their time away from work, their convenience is not to be disregarded under § 1404(a), and plaintiff does not dispute that their testifying in Colorado would likely disrupt their routines for three days each. Their continued employment with Union Pacific through trial is no certainty either.

Although not binding precedents, the Colorado federal district court case law cited by plaintiff is distinguishable from this case. In *Aufrecht v. Union Pacific Railroad Co.*, Civil Action No. 02–RB–1551(MJW) (D.Colo.) and *Caudillo v. Union Pacific Railroad Co.*, Civil Action No. 93–M–565 (D.Colo.) there appear to have been several Colorado-based treating and examining physicians expected to testify for each plaintiff, unlike the one physician here. In *Ronk v. Burlington Northern Railroad*, 88–F–1899 (D.Colo.), there were no Colorado witnesses, and the medical witnesses were from Illinois, Oklahoma and parts of Nebraska apparently some distance from the anticipated place of trial, North Platte, Nebraska, had the transfer motion been granted. Under those facts the railroad failed to sustain its burden of clear and convincing evidence in favor of

the transfer. Finally, in *Pass v. Burlington Northern Railroad Co.*, Civil Action No. 90–S–1390, the plaintiff was a resident of Iowa, the alleged injuries for which damages were sought under FELA occurred in South Dakota and lay and expert witnesses were located in Nebraska, Iowa, South Dakota, Minnesota and Colorado. Unlike here, no state could claim the center of gravity of the litigation. The court found that the railroad in *Pass* was "asking the Court to weigh the relative inconveniences of the witnesses and parties based on little specific information concerning their purported inconveniences." Order of Dec. 12, 1990 at 2. Here, Union Pacific has outlined some of the inconveniences to its Nebraska employees if they were to testify in Colorado and noted Nebraska-based medical providers who are under neither party's control, whereas plaintiff has not set forth with specificity any inconvenience to or unwillingness by Dr. Kleiner to testifying in Nebraska.

On the contrary, ample case law supports a transfer in these circumstances. *See e.g., Gaskins v. National Railroad Passenger Corp. (AMTRAK)*, 2001 WL 322518, *2, 2001 U.S. Dist. LEXIS 3962 *5 (E.D.Pa., Feb. 21, 2001) ("While Plaintiff's choice of forum and the location of her treating physician are factors to be considered by the Court, they are clearly outweighed by the other operative facts of the case, and thus the case will be transferred."); *Young v. Canadian Nat. Railway Co.*, 2003 WL 133220 *3, 2003 U.S. Dist. LEXIS 590 *11 (E.D.La., Jan. 15, 2003) (in granting transfer of FELA action, the court noted that the employee's treating physician and healthcare providers, with the exception of one doctor, resided in the transferee district); *Meyer v. Union Pacific Railroad Co.*, Civil Action No. 03–F–1697 (D.Colo.), Order of Decem-

ber 1, 2003 (one Colorado treating physician not enough to avoid transfer of FELA case to Nebraska where Nebraska plaintiff was injured in that state and where most of the witnesses would be Nebraskans).

Finally, the Court notes that plaintiff places great emphasis on the fact that Union Pacific employs over 6,700 persons in the state of Nebraska, and 2,600 persons in the city of North Platte alone. Response at 7. Justice administration issues including the ability to empanel an impartial jury upon a transfer are among the "public interest factors" relevant to considering whether the transfer of a case under § 1404(a) is "in the interest of justice." *See e.g., Pippett v. Waterford Development, LLC,* 166 F.Supp.2d 233, 238 (E.D.Pa.2001); *Dunn v. Soo Line R. Co.,* 864 F.Supp. 64, 66 (N.D.Ill.1994). Yet that factor may well support a Nebraska jury for this dispute. In the *forum non conveniens* case leading up to the enactment of § 1404(a), *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Supreme Court stated: "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.... There is a local interest in having localized controversies decided at home." *See also Graza v. Grand Trunk Western Railroad, Inc.,* 1999 U.S. Dist. LEXIS 1978 *5–7 (N.D.Ill., Feb. 22, 1999) (in a FELA case where all but one treating physician of plaintiff resided in the jurisdiction of the transferee court, and where the court could not "foresee any relation between Graza's claim and interests in the Chicago community," transfer of the case to Western District of Michigan was appropriate.) Moreover, plaintiff does not sufficiently demonstrate that he would be unable to obtain an impartial jury in Nebraska. For § 1404(a) transfer consider-

ation purposes, "[a]ny bias or prejudice a prospective juror may have ... can be determined and dealt with during voir dire." *In re Wyoming Tight Sands Antitrust Cases,* 723 F.Supp. 561, 563 (D.Kan. 1988).

**CONCLUSION**

For the foregoing reasons, Defendant Union Pacific Railroad Company has met its burden that a transfer would appropriate "[f]or the convenience of parties and witnesses [and] in the interest of justice." The Motion to Transfer Pursuant to 28 U.S.C. § 1404 (Dkt. #5) is therefore GRANTED and the case is ordered transferred to the District of Nebraska. The hearing set for Friday, April 22, 2005 at 8:30 a.m. is VACATED.