**AMINI INNOVATION CORPORATION,**
a California corporation, Plaintiff,

v.

**JS IMPORTS INC., a New York corporation, Designer Furniture Warehouse, Inc., an unknown business entity, and Does 1–9, inclusive, Defendants.**

No. CV 06–08088MMM(JCx).

United States District Court,
C.D. California.

May 22, 2007.

Daniel M. Cislo, Esq. and Mark D. Nielsen, Esq. of Cislo & Thomas LLP, for Plaintiff Amini Innovation Corporation.

Bruce Isaacs, Esq. and David Boren, Esq. of Wyman and Isaacs LLP and Eli S. Cohn, Esq. of McDonough Marcus Cohn Tretter Heller & Kanca LLP of New Rochelle, New York acting of counsel for JS Imports, for Defendants.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND/OR IMPROPER VENUE; DENYING DEFENDANTS' MOTION TO TRANSFER VENUE

MARGARET M. MORROW, District Judge.

This action involves an intellectual property dispute between plaintiff Amini Innovation Corporation ("AICO") and defendants Jo–Lind Associates, Inc. assumed name J.S. Imports, Inc. ("J.S. Imports") and Interiors by Michi, Inc. d/b/a Designer Warehouse Furniture, Inc ("DWF"). AICO owns registered copyrights and design patents on its Monte Carlo™, Tresor™, LaFrancaise™, Paradisio™, and Eden™ furniture collections. It asserts that defendants are marketing and selling furniture with designs that are substantially similar to AICO's copyrighted and patented designs. Defendants have moved to dismiss the action for lack of personal jurisdiction and/or improper venue; alternatively, they seek to transfer venue to the Southern District of New York.

## I. FACTUAL BACKGROUND

### A. J.S. Imports

J.S. Imports is a New York corporation.[1] It does not do business in California, nor has it made any sales to residents of California.[2] J.S. Imports does not sell to the public and has never distributed its catalogue in California.[3] Its sells and distributes its catalogue to retailers, but only through commissioned sales persons who visit the retailers on its behalf.[4] Some of its products are shipped from China, through the Port of Los Angeles in Long Beach, California, to final ports of delivery in Texas or New Mexico.[5]

The back cover of J.S. Imports' catalogue includes the following inscription:[6]

---

1. Declaration of Steven Weinberg ("Weinberg Decl. I"), ¶ 1.

2. *Id.*, ¶¶ 3–4.

3. *Id.*, ¶¶ 13–14.

4. *Id.*, ¶ 14.

5. Declaration of Mark D. Nielsen ("Neilsen Decl."), ¶ 16 and Exhs. 17–20; Supplemental Declaration of Steven Weinberg ("Weinberg Decl. II"), ¶ 4 and Exh. A. Shipping documents from a manufacturer in China show that Long Beach was the "port of discharge" and that Texas or New Mexico were the "ports of delivery." (*Id.*, Exh. A).

6. Weinberg Decl. I, Exh. D.

JS
IMPORTS

42 Lambert Ridge Cross River NY, 10518
Phone: 609–259–0829
Fax: 609–259–1671
E-mail: sweinb6713@aol.com
www.designerfurniturewarehouse.com

Steven Weinberg, president and treasurer of J.S. Imports, states that the company placed DFW's website, www.designer furniturewarehouse.com, on its catalogue "as an advertisement for DFW, a startup company."[7] He asserts that DFW is a "separate and independent company not affiliated with J.S. Imports,"[8] that J.S. Imports has not conducted any business over the website owned by DFW,[9] and that DFW does not solicit business for J.S. Imports.[10] Weinberg asserts this is because J.S. Imports sells only to retailers and retailers do not order over the Internet, as the prices listed on DFW's website reflects retail prices, not the wholesale prices offered to retailers.[11]

## B. DFW

Michelle Sagel–Howe, president and principal shareholder of DFW, created and launched the website, www.designer furniturewarehouse.com, in May 2005.[12] Because DFW "was only set up to ship its products" to six states—Maryland, Delaware, Virginia, New York, New Jersey, and Pennsylvania—the website "would only accept orders from potential customers" in those six states.[13] Sagel–Howe contends that, as a result, no California resident could have placed an order or purchased products on the DFW website. Indeed, no California resident has ever purchased products from DFW, whether through the Internet or otherwise.[14] DFW did not sell a single product through its website and stopped offering products for sale over the Internet on June 6, 2006.[15]

AICO's attorney, Mark D. Nielsen, went on a "shopping spree" on DFW's website on March 1, 2007. He "went through the process of placing orders" for allegedly infringing products but "stopped short of entering [his] credit card information."[16] Sagel–Howe asserts, however, that had Nielsen entered his credit card information, he would have discovered that the products were not for sale, as DFW had stopped offering products for sale on June 6, 2006.[17]

DFW dissolved on March 2, 2007.[18] Sa-

---

**7.** *Id.,* ¶ 15.

**8.** *Id.,* ¶ 16; see also Declaration of Michelle Sagel–Howe in Support of DFW's Motion ("Sagel–Howe Decl. II"), ¶ 18 ("DFW and JS Imports are two separately-owned companies. They are not affiliated companies").

**9.** Weinberg Decl. I, ¶ 16.

**10.** *Id.,* ¶ 15.

**11.** *Id.,* ¶¶ 13, 15.

**12.** Declaration of Michelle Sagel–Howe in Support of J.S. Import's Motion ("Sagel–Howe Decl. I"), ¶ 2.

**13.** *Id.,* ¶ 3.

**14.** *Id.*

**15.** *Id.,* ¶ 4.

**16.** Nielsen Decl., ¶ 15 and Exhs. 13–15. Defendants object to this evidence on the grounds that it lacks foundation, assumes facts not in evidence, is misleading, mischaracterizes the facts, and is irrelevant. These objections are overruled. Nielsen may testify to a "shopping spree" that he personally undertook, and the evidence is relevant because it tends to show that defendants offered allegedly infringing products for sale on the Internet. The evidence is not "mischaracterized" simply because Sagel–Howe asserts that, had Nielsen entered his credit card information, the transaction would not have been completed.

**17.** Declaration of Michelle Sagel–Howe in Support of DFW's Motion ("Sagel–Howe Decl. II"), ¶ 3.

**18.** *Id.,* ¶ 5.

gel–Howe states that DFW was a Maryland corporation that never did any business in California.[19] It did not advertise in California, maintain offices or employees in California, or solicit any sales in California.[20]

### C. Alleged Affiliation Between J.S. Imports And DFW

Although representatives of J.S. Imports and DFW insist the two companies are unrelated, AICO alleges they are affiliated. AICO's attorney, Nielsen, entered the telephone and facsimile numbers on the back of J.S. Imports' catalogue, 609–259–0829 and 609–259–1671, into a whitepages.com reverse search on March 15, 2007.[21] The searches identified Michelle S. Howe of Millstone Township, New Jersey as the owner of the telephone number, and Michelle Howe of Trenton, New Jersey as the owner of the facsimile number.[22] The email address, as well as the physical address on the catalogue, belong to Weinberg, however.[23]

Neilsen's paralegal, Eileen K. Andree, called the telephone number, 609–259–0829, on March 22, 2007. She heard a voice recording, which stated: "Hi you've reached Michelle with JS Imports, office hours are 9:00 a.m. to 5:00 p.m. Monday through Friday. You may fax any correspondence or purchase orders to (609) 259–1671 or leave a message. I'll get back to you as soon as I can. Thank you for calling."[24] Defendants do not deny the numbers are owned by Sager–Howe, former president of DFW. Weinberg explains, however, that Sager–Howe now works for J.S. Imports.[25]

AICO has also submitted two return receipt postcards that reflect the mailing of a December 18, 2006 cease and desist letter and a copy of the complaint (sent January 23, 2007). Both mailings were addressed to "Office of the President, JS Imports d/b/a Designer Furniture Warehouse, 42 Lambert Ridge, Cross River, N.Y. 10518." The postcards were received and signed by John Rigg on December 21, 2006 and January 25, 2007, respectively.[26] Weinberg asserts that he never received the December 18, 2006 cease and desist letter, that 42 Lambert Ridge, Cross River, New York is a single-family residence where he lives with his wife and two children, that no one by the name of John Rigg lives or works at the address, and that he has never heard of a person with that name.[27]

## II. DISCUSSION

### A. Standard Governing Motions To Dismiss For Lack Of Personal Jurisdiction

#### 1. Procedural Considerations

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the

---

19. *Id.,* ¶¶ 1, 8.

20. *Id.,* ¶¶ 9–17.

21. Nielsen Decl., ¶¶ 4, 6 and Exhs. 2 and 4.

22. *Id.*

23. Weinberg Decl. II, ¶ 7 ("42 Lambert Ridge, Cross River, New York is a single-family residence where I live with my wife and two (2) children").

24. Declaration of Eileen K. Andree ("Andree Decl."), ¶¶ 1–2.

25. Weinberg Decl. II, ¶ 6.

26. Neilsen Decl., ¶¶ 7–8, 10 and Exhs. 6–7. Defendants object to this evidence on relevance grounds. The objection is overruled. The evidence is relevant to AICO's attempts to show that J.S. Imports and DFW are affiliated and that defendants' allegedly infringing activities continued after they received a cease-and-desist letter.

27. Weinberg Decl. II, ¶ 7.

court may decide the issue of personal jurisdiction on the basis of affidavits and documentary evidence submitted by the parties, or hold an evidentiary hearing regarding the matter. See 5A Charles A. Wright & Arthur Miller, FEDERAL PRACTICE AND PROCEDURE, § 1351, pp. 253–59 and n. 31–35 (2d ed.1990); *Data Disc, Inc. v. Systems Tech. Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977); *Rose v. Granite City Police Dept.,* 813 F.Supp. 319, 321 (E.D.Pa.1993). Whichever procedure is used, plaintiff bears the burden of establishing that jurisdiction is proper. See *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir.2001); *Ziegler v. Indian River County,* 64 F.3d 470, 473 (9th Cir. 1995); *Flynt Distributing Co. v. Harvey,* 734 F.2d 1389, 1392 (9th Cir.1984). In this case, the pleadings, declarations and documentary evidence submitted by the parties provide an adequate basis for evaluating jurisdiction. Accordingly, no evidentiary hearing is necessary. ,

■ Because this matter is being decided on the basis of affidavits and documentary evidence, plaintiffs need only make a prima facie showing of personal jurisdiction, i.e., facts that, if true, would support the court's exercise of jurisdiction over the defendant. *Unocal,* 248 F.3d at 922 (quoting *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir.1995)); *Fields v. Sedgwick Associated Risks, Ltd.,* 796 F.2d 299, 301 (9th Cir.1986). All allegations in the complaint must be accepted as true, to the extent not controverted by defendant's affidavits, and all conflicts in the evidence must be resolved in plaintiff's favor. See *CE Distribution, LLC v. New Sensor Corp.,* 380 F.3d 1107, 1110 (9th Cir.2004); *Unocal,* 248 F.3d at 922; *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1129 (9th Cir.2003); see also *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir.1995) (" '[T]he plaintiff's prima facie showing is sufficient notwithstanding [a] contrary presentation by the moving party,' " quoting *Behagen v. Amateur Basketball Ass'n. of the United States,* 744 F.2d 731, 733 (10th Cir.1984)).

## 2. Substantive Standard

■ Whether a federal court can exercise personal jurisdiction over a non-resident defendant turns on two independent considerations: whether an applicable state rule or statute permits service of process on the defendant, and whether the assertion of personal jurisdiction comports with constitutional due process principles. See *Pacific Atlantic Trading Co. v. M/V Main Express,* 758 F.2d 1325, 1327 (9th Cir.1985).

■ California's long-arm statute extends jurisdiction to the limits of constitutional due process. See *Gordy v. Daily News, L.P.,* 95 F.3d 829, 831 (9th Cir. 1996); CAL. CODE CIV. PROC. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States"). Consequently, when service of process has been effected under California law, the statutory and constitutional requirements merge, and the court asks only whether the exercise of jurisdiction over defendant would comport with due process. See *Fireman's Fund Ins. Co. v. National Bank of Cooperatives,* 103 F.3d 888, 893 (9th Cir.1996); *Aanestad v. Beech Aircraft Corp.,* 521 F.2d 1298, 1300 (9th Cir.1974).

■ The Fourteenth Amendment's Due Process Clause permits courts to exercise personal jurisdiction over any defendant that has sufficient "minimum contacts" with the forum that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). There are two recognized bases for exercising personal

jurisdiction over non-resident defendants: (1) "general jurisdiction," which arises when the defendant's activities in the forum are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over it in all matters; and (2) "specific jurisdiction," which arises when a defendant's specific contacts with the forum give rise to the claim in question. See *Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); see also *Doe v. American National Red Cross,* 112 F.3d 1048, 1050–51 (9th Cir.1997).

### 3. General Jurisdiction

■■■ As noted, a court may exercise general jurisdiction over a defendant if the defendant has "substantial" or "continuous and systematic" contacts with the forum state that "approximate physical presence" there. *Bancroft & Masters, Inc. v. Augusta National, Inc.,* 223 F.3d 1082, 1086 (9th Cir.2000); see also *Helicopteros,* 466 U.S. at 416, 104 S.Ct. 1868. Properly invoked, general jurisdiction allows a federal court to hear *any* cause of action against the defendant, even one unrelated to its activities in the forum state. *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952). To determine if a defendant's contacts with the forum state are "continuous and systematic" or "substantial," the court must examine all of its activities that impact the state, including whether it makes sales, solicits or engages in business, serves the state's markets, designates an agent for service of process, holds a license, or has employees there. See *Helicopteros,* 466 U.S. at 411, 104 S.Ct. 1868; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Perkins,* 342 U.S. at 445–49, 72 S.Ct. 413.

In a one-line footnote, AICO asks the court to decide "whether or not JS' importation of at least some of its products through Long Beach, California and Los Angeles, California supports a finding of *general* jurisdiction as to Defendants." [28] The Ninth Circuit addressed an analogous situation in *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114 (9th Cir.2002). Plaintiff in *Glencore Grain* filed suit against Shivnath Rai, a rice manufacturer and exporter located in India. *Id.* at 1118. In an attempt to establish that California courts could exercise general jurisdiction over Shivnath Rai, plaintiff submitted evidence that Shivnath Rai made one shipment of rice through the Port of Los Angeles in 1987 and 15 shipments through the Port of San Francisco in 1999 and 2000. *Id.* at 1119. It also proffered evidence that Shivnath Rai's sales agent for rice sales in the United States was located in Union City, California. *Id.*

The *Glencore Grain* court held that it was improper to exercise general jurisdiction over Shivnath Rai. *Id.* at 1124. It acknowledged that Shivnath Rai exported "considerable" rice through the Port of San Francisco, but characterized the activity as "doing business *with* California" and not as "doing business *in* California." *Id.* (emphasis original). In other words, the court stated, while Shivnath Rai had "stepped through the door, there [was] no indication that it ha[d] sat down and made itself at home." *Id.* Although the company's agent was located in California, the agent was not employed by Shivnath Rai and not permitted to contract on its behalf. *Id.* at 1125. Concluding that Shivnath Rai's contacts made it "at most, a visitor to the forum," the court held that "the 'physical presence' necessary for an assertion of general jurisdiction require[d] more." *Id.*

---

28. Op. at 9 n. 1.

■ Like Shivnath Rai in *Glencore Grain*, there is no evidence that J.S. Imports has "sat down and made itself at home" in California. The company ships approximately six percent of its products *through* the Port of Los Angeles in Long Beach, California; in each instance, however, the "port of destination" is located outside of California.[29] Like Shivnath Rai, J.S. Imports does not own property, keep bank accounts, maintain employees, solicit business, or otherwise do business in California.[30] Compare *id.* at 1124 ("There is no evidence that Shivnath Rai owns property, keeps bank accounts, has employees, solicits business, or has designated an agent for service of process in California"). Thus, like Shivnath Rai, J.S. Imports' level of contact with California falls far short of that needed to establish "physical presence" supporting the exercise of general jurisdiction. See also *Happy Merchant Ltd. v. Far Eastern Shipping Co., Inc.,* No. C–94–3927, 1995 WL 705131, *3 (N.D.Cal. Nov.8, 1995) ("Plaintiff Happy Merchant alleges that ships owned by Far Eastern continuously and systematically use the port in Richmond, California, and that Far Eastern employs a business agent in San Francisco. Plaintiff argues that these contacts are adequate to allow the exercise of general jurisdiction. This court disagrees").

### 4. Specific Jurisdiction

■ AICO next argues that the court may exercise specific jurisdiction over both defendants. Before specific jurisdiction can be established, three things must be shown: (1) that defendants did some act or consummated some transaction in California by which defendants purposefully availed themselves of the privilege of conducting activities in the state; (2) that AICO's claims arise out of such activity; and (3) that the exercise of jurisdiction is reasonable. *Unocal,* 248 F.3d at 923; *Fireman's Fund,* 103 F.3d at 894; *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir.1995).

■ "Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff." *Sinatra v. National Enquirer,* 854 F.2d 1191, 1195 (9th Cir.1988). To demonstrate purposeful availment, AICO must show that defendants "engage[d] in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *Gray & Co. v. Firstenberg Machinery Co.,* 913 F.2d 758, 760 (9th Cir.1990) (citing *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 381 (9th Cir. 1990), overruled on other grounds, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)); see also *Burger King v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, . . . or of the 'unilateral activity of another party or a third person . . .' "). A defendant's contacts with the forum must be such that it should "reasonably anticipate being haled into court there." See *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559.

■ Courts distinguish between contract and tort cases in assessing whether a defendant has purposefully availed itself of the benefits of conducting activities in the forum. See *Roth v. Garcia Marquez,* 942 F.2d 617, 621 (9th Cir.1991). In tort cases, courts exercise jurisdiction over defendants who have engaged in an act that has an effect in the forum state, even if the act

---

**29.** See Weinberg Decl. II, ¶ 4 and Exh. A; Reply at 1:19–20.

**30.** Weinberg Decl. I, ¶¶ 3–12.

itself takes place outside state boundaries. See *id.; Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir.1985) ("The commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements under *Data Disc* [, 557 F.2d. at 1288]. A tortious act, standing alone, can satisfy all three requirements under *Data Disc* if the act is aimed at a resident of the state or has effects in the state").

 In the contract context, the fact that the defendant entered into a contract with a forum resident is not sufficient, standing alone, to establish purposeful availment. See *Burger King,* 471 U.S. at 478, 105 S.Ct. 2174; *Gray,* 913 F.2d at 760; *Sher v. Johnson,* 911 F.2d 1357, 1362 (9th Cir.1990). Rather, the court must utilize "a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.' ... It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King,* 471 U.S. at 479, 105 S.Ct. 2174. Here, AICO's substantive claims sound in tort, rather than contract. See *Brayton Purcell LLP v. Recordon & Recordon,* 361 F.Supp.2d 1135, 1140 (N.D.Cal.2005), ("it is undisputed that a claim for copyright infringement sounds in tort, and therefore a purposeful direction analysis is appropriate"); *IO Group, Inc. v. Pivotal, Inc.,* No. C 03–5286 MHP, 2004 WL 838164, *5 (N.D.Cal. Apr.19, 2004) (applying the *Calder* effects test in a copyright infringement action). Thus, the court must ask whether defendants engaged in conduct that had an effect in the forum state.

### a. Whether Defendants Purposefully Availed Themselves Of The Benefits Of Doing Business In California By Maintaining The DFW Website

AICO contends that specific jurisdiction is proper because DFW (and J.S. Imports, through its alleged affiliation with DFW) purposefully availed themselves of the privilege of conducting business in California by operating an interactive website through which California residents could purchase products. The Ninth Circuit utilizes the "sliding scale" analysis, first set forth in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa. 1997), to determine whether operation of a website constitutes purposeful availment of the benefits of doing business in the forum state absent other contacts with the forum. See *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 418 (9th Cir.1997) (citing *Zippo,* 952 F.Supp. at 1124).

 Applying this sliding scale, a passive website, i.e., one that "does little more than make information available to those who are interested in it," does not support the exercise of personal jurisdiction over its operators. *Zippo,* 952 F.Supp. at 1123; see also *Cybersell,* 130 F.3d at 418 ("[N]o court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's home state. Rather, in each, there has been 'something more' to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state" (citations omitted)).

 At the opposite end of the scale, an interactive website through which "the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet" justifies a court's exercise of personal jurisdiction. *Zippo,* 952 F.Supp. at 1124.

Between these two extremes is a middle ground in which an interactive website is used to "exchange information with the host computer." *Id.* In such cases, the constitutionality of exercising personal jurisdiction is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet." *Id;* see generally *Cybersell,* 130 F.3d at 418 ("Courts that have addressed interactive sites have looked to the 'level of interactivity and commercial nature of the exchange of information that occurs on the Web site' to determine if sufficient contacts exist to warrant the exercise of jurisdiction"); [31] *Stomp, Inc. v. NeatO, LLC,* 61 F.Supp.2d 1074, 1078 (C.D.Cal.1999).

The parties agree that DFW's website was not a "passive" site, as it did "something more" than simply advertise furniture for sale. See *Cybersell,* 130 F.3d at 418. Through linked pages, the site permitted customers to submit purchase orders and/or credit card payments for products they wished to buy. See *Stomp,* 61 F.Supp.2d at 1078 ("By maintaining a commercial website through which it markets and sells its goods, NeatO has reached out beyond its home state of Connecticut to avail itself of the benefits of the California forum").

There is no evidence, however, that defendants conducted actual commercial transactions through the website. Nor is there any evidence that defendants conducted business with California residents via the site. Indeed, Sager–Howe denies both, asserting that DFW never completed *any* transactions through the website, with California residents or anyone else. See *Stomp,* 61 F.Supp.2d at 1077 ("[T]he *Cybersell* case is distinguishable from the present case in that NeatO has undertaken commercial activity on its website and has

offered for sale and sold its products to California citizens via the Internet"); *Zippo,* 952 F.Supp. at 1121 ("Defendant has approximately 140,000 paying subscribers worldwide. Approximately two percent (3,000) of those subscribers are Pennsylvania residents"); see also *Winfield Collection, Ltd. v. McCauley,* 105 F.Supp.2d 746, 751 (W.D.Mich.2000) ("[T]he court is not prepared to broadly hold ... that the mere act of maintaining an interactive website that includes interactive features *ipso facto* establishes personal jurisdiction over the sponsor of that website anywhere in the United States"). As a result, AICO has not met its burden of making a *prima facie* showing that defendants purposefully availed themselves of the benefits of doing business in California through their maintenance and use of the website www. designerfurniturewarehouse.com.

**b. Whether The Court May Exercise Specific Jurisdiction Over Defendants Under The *Calder* Effects Test**

In actions that sound in tort, courts may exercise jurisdiction over defendants who engaged in an act that has an effect in the forum state, even if the act itself takes place outside state boundaries. *Roth,* 942 F.2d at 621. The mere fact that an effect in the forum state is foreseeable, however, is not sufficient to permit the exercise of personal jurisdiction. In *Pebble Beach Co. v. Caddy,* 453 F.3d 1151 (9th Cir.2006), the Ninth Circuit observed:

"In *Calder v. Jones,* the Supreme Court held that a foreign act that is both aimed at and has effect in the forum satisfies the first prong of the specific jurisdiction analysis. 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). We have commonly referred to this holding as the

---

**31.** As the *Cybersell* court noted, "[s]ome courts have also given weight to the number of 'hits' received by a web page from resi-

dents in the forum state, and to other evidence that Internet activity was directed at, or bore fruit in, the forum state." *Id.* at 419.

'*Calder* effects test.' ... To satisfy this test the defendant 'must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state,' ... However, referring to the *Calder* test as an 'effects' test can be misleading. For this reason, we have warned courts not to focus too narrowly on the test's third prong—the effects prong—holding that 'something more' is needed in addition to a mere foreseeable effect." *Id.* at 1156.

See *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) ("Subsequent cases have struggled somewhat with *Calder*'s import, recognizing that the case cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state will always give rise to specific jurisdiction. We have said that there must be 'something more.' ... We now conclude that 'something more' is what the Supreme Court described as 'express aiming' at the forum state").

The Ninth Circuit has described the "something more" that is required before the exercise of jurisdiction is appropriate as follows: "[T]he express aiming requirement of *Calder* [is] 'satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resi-

dent of the forum state.'" *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 379 F.3d 1120, 1124–25 (9th Cir. 2004) (quoting *Bancroft & Masters*, 223 F.3d at 1087);[32] see also *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1131 (9th Cir.2003) ("B & C is alleged to have committed an intentional tort—interference in ASR's contractual and economic relationships.... Second, B & C knew, of course, that ASR was a California resident, and so the alleged acts were expressly aimed at ASR—a California resident.... Third, ASR is a California corporation whose principal place of business is in California, and the brunt of the harm was therefore felt in California.... In sum, under our precedents the facts alleged here are more than sufficient to satisfy the 'effects' test").

■■■ Applying the *Calder* effects test, the Ninth Circuit has held that specific jurisdiction exists where a plaintiff files suit in its home state against an out-of-state defendant and alleges that defendant intentionally infringed its intellectual property rights knowing it was located in the forum state. Plaintiff in *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284 (9th Cir.1997),[33] a television studio located in California, filed a copyright infringement action in the Central District of California, naming as defendant an individual who resided outside the state. *Id.* at 288. Citing *Calder*, the Ninth Circuit held the ex-

---

**32.** Proof of wrongful conduct on the part of the defendant is a critical element of this definition. As the court noted in *Yahoo! Inc.*, "for [defendants'] litigation efforts against Yahoo! to amount to 'express aiming,' those efforts must qualify as wrongful conduct targeted at Yahoo!." *Id.* at 1125; see also *id.* at 1125 n. 1 (noting that two of the three members of the *Bancroft & Masters* panel "concurred separately to specify that their decision rested solely on the assumption that the defendant had engaged in tortious conduct,

saying, 'Jurisdiction in California would be ripe for challenge if following the development of trial it should appear that ANI acted reasonably and in good faith to protect its trademark against an infringer,'" quoting *Bancroft & Masters*, 223 F.3d at 1089 (Sneed, J., concurring)).

**33.** *Columbia Pictures* was reversed was on other grounds in *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998).

ercise of specific jurisdiction proper, stating: "[Plaintiff] alleged, and the district court found, that [defendant] willfully infringed copyrights owned by [plaintiff], which, as [defendant] knew, had its principal place of business in the Central District. This fact alone is sufficient to satisfy the 'purposeful availment' requirement." *Id.* at 289; see also *Panavision Intern., L.P. v. Toeppen,* 141 F.3d 1316, 1321 (9th Cir.1998) (holding that the effects test was satisfied in a trademark infringement case as defendant knew that plaintiff would suffer harm in California, since "its principal place of business was in California, and the heart of the theatrical motion picture and television industry is located there").

Following *Columbia Pictures* and *Panavision,* numerous courts within the Ninth Circuit have found specific jurisdiction in cases where a plaintiff brings suit in its home forum against an out-of-state defendant, alleging that the defendant engaged in infringing activities knowing that plaintiff was located in the forum. See, e.g., *Nissan Motor Co. v. Nissan Computer Co.,* 246 F.3d 675, 2000 WL 1875821, *1 (9th Cir. Dec.26, 2000) (Unpub. Disp.) ("Here, Nissan North America, a California resident, alleges that NCC intentionally infringed upon its trademark and that such harm was suffered primarily in its home forum. NCC claims there was no evidence it knew that Nissan North America was a California resident. But NCC admits that it received a certified letter from Nissan North America, which contained its California address, several years before it began advertising auto products on its webpage. And NCC does not purport to have relied on a belief that Nissan North America was a resident of a different forum. Accordingly, the district court correctly concluded that NCC expressly aimed its allegedly infringing activities at California"); *MCA Records, Inc. v. Charly Records Ltd.,* 108 F.3d 338, 1997 WL 76173, *8 (9th Cir. Feb.21, 1997) (Unpub.Disp.) ("So long as Holdings and International were aware of MCA's rights in the Chess Masters and trademarks, knew that MCA was a California corporation, and knew that their licensing of the Masters and trademarks would result in infringing products being distributed in the United States, a finding of purposeful availment is appropriate under *Calder* "); *IO Group, Inc. v. Pivotal,* No. C 03–5286 MHP, 2004 WL 838164, *6 (N.D.Cal. Apr.19, 2004) (concluding, in a copyright infringement case, that plaintiff "has adequately demonstrated that defendants published images belonging to a California company, affecting an industry primarily centered in California, knowing that harm would likely be felt in that state"); *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.,* 243 F.Supp.2d 1073, 1090 (C.D.Cal. 2003) ("Plaintiffs have alleged that Sharman intentionally and materially contributed to the infringement of Plaintiffs' works, and that it did so with full knowledge that much of the harm from this infringement would be suffered in California. This is sufficient to establish a prima facie case of purposeful availment under the effects test of *Panavision* ").

 AICO alleges that defendants willfully infringed its copyrights and design patents.[34] It contends defendants had ac-

---

**34.** First Amended Complaint, ¶¶ 44, 52. Because AICO alleges that both J.S. Imports and DFW have undertaking infringing activities, the two companies' affiliation or non-affiliation with one another is immaterial to the jurisdictional analysis.

Defendants asserted at the hearing on these motions that they did not know that AICO owned patents in the various furniture designs. Defendants apparently rely on the Ninth Circuit's holding in *Cybersell* that a defendant does not purposefully direct its activities toward plaintiff's forum state if it infringes a trademark without knowledge that plaintiff claims rights in the mark. See *Cybersell,* 130 F.3d at 420 & n. 6; see also

cess to its work and must have known it was located in California because of its "high profile" in the furniture industry and because it has extensively advertised in industry publications. It submits copies of several full-page advertisements in the weekly newsletter, *Furniture Today*, including a full-page advertisement in which AICO alerts readers that it will "vigorously defend its copyrights, trademarks and design patents worldwide."[35] All of these advertisements include AICO's address in Pico Rivera, California.[36] Defendants do not deny that they knew AICO was located in California. Under *Columbia Pictures* and *Panavision*, these facts are sufficient to establish that defendants "purposefully directed" their allegedly infringing activities at California, knowing the brunt of the harm would be suffered in California.[37]

*Bancroft & Masters*, 223 F.3d at 1087–88 ("'[C]ases from this circuit bear out the conclusion that 'express aiming' encompasses wrongful conduct individually targeting a known forum resident.... The presence of individualized targeting is what separates these cases from others in which we have found the effects test unsatisfied. In *Cybersell*, for example, there was no showing that the defendants even knew of the existence of the plaintiffs, let alone targeted them individually"); *Meade Instruments Corp. v. Reddwarf Starware LLC*, 47 U.S.P.Q.2d 1157, 1159 (C.D.Cal.1998) ("The narrow scope of the *Cybersell* opinion became apparent when the court in [*Panavision*] recently held the registration of a Internet domain name coupled with a subjective scheme having an effect in California was sufficient contact for specific jurisdiction"). Because defendants offered no evidence to substantiate this assertion, the court cannot consider their purported lack of knowledge of plaintiff's ownership of the patents in determining whether it may exercise personal jurisdiction over them at this point. See *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir.2002) ("Although the plaintiff cannot 'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true.... Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor" (citations omitted)). Defendants may renew their motion to dismiss if, after appropriate discovery, they can offer evidence that they undertook the allegedly infringing activities without knowledge that AICO claimed intellectual property rights in the designs. To the extent the evidence defendants intend to offer is "intertwined with the merits" of AICO's claim for intentional copyright and patent infringement, or involves "issues of credibility or disputed questions of fact which cannot be resolved through discovery," however, the motion should not be renewed, as the jurisdictional issue will have to be "defer[red] ... until trial on the merits." *Data Disc*, 557 F.2d at 1289, n. 7; see also *Gordon v. Ascentive, LLC*, No. CV–05–5079–FVS, 2005 WL 3448025, *5 (E.D.Wash. Dec.15, 2005) ("Since the jurisdictional issues here are intertwined with the merits, the Court will determine the jurisdiction issue at trial, where Plaintiff 'may present his case in a coherent, orderly fashion and without the risk of prejudicing his case on the merits,'" quoting *Data Disc*, 557 F.2d at 1285 n. 2); *Lozano v. American Express Travel Related Servs., Inc.*, No. Civ. 02–39–HA, 2002 WL 31478132, *2 (D.Or. June 12, 2002) ("When the jurisdictional facts of the case are intertwined with the merits, ... a motion to dismiss [for lack of subject matter jurisdiction] should usually be denied," citing *Data Disc*, 557 F.2d at 1285).

35. Nielsen Decl., ¶ 5 and Exh. 3. Defendants object to this evidence on foundational and relevance grounds. The objections are overruled. Evidence of AICO's exposure within the industry makes more probable that defendants knew of its location in California. See Fed.R.Evid. 410 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). Nielsen states that he represents AICO in this action and that he is "familiar with the correspondence, pleadings, documents, and discovery in this case." (Nielsen Decl., ¶¶ 1–2). This familiarity provides sufficient foundation for Nielsen's testimony that the attached AICO advertisements are what they purport to be.

36. *Id.*

37. Because the court finds that it may exercise personal jurisdiction over defendants, it

■ Once purposeful direction is established, defendants may defeat jurisdiction only by "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993) (quoting *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174). Defendants do not argue that, assuming the *Calder* effects test is met, exercising personal jurisdiction over them would be unreasonable, and the court can discern no reason why litigating this dispute in California would be "so gravely difficult and inconvenient" for defendants as that they would be placed at a "severe disadvantage in comparison to [their] opponent." *Burger King*, 471 U.S.

at 478, 105 S.Ct. 2174. Therefore, the court concludes that defendants' motion to dismiss for lack of personal jurisdiction must be denied.[38]

### B. Legal Standard Governing Motions To Transfer Venue

■ "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This provision gives a district court broad discretion to transfer a case to another district where venue is also proper.[39] See, e.g., *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 639 (9th Cir. 1988); *Commodity Futures Trading*

---

denies defendants' motion to dismiss for improper venue. See *Columbia Pictures*, 106 F.3d at 288 (under 28 U.S.C. § 1400(a), venue "is proper in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state"), rev'd on other grounds, *Feltner*, 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438; *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co., Inc.*, 8 F.3d 441, 445 (7th Cir.1993) (venue is only proper if the defendant "may be found" in the district, and § 1400(a)'s "may be found" clause is interpreted "to mean that a defendant is amenable to personal jurisdiction in a particular forum"); *Colt Studio, Inc. v. Badpuppy Enterprise*, 75 F.Supp.2d 1104, 1112 (C.D.Cal.1999) ("Defendants also challenge plaintiff's choice of venue. The copyright venue statute governs the venue in this action. See 28 U.S.C. § 1400. Section 1400 states that "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights ... may be instituted in the district in which the defendant or his agent resides or may be found." *Id.* For purposes of this section, a defendant 'may be found' wherever personal jurisdiction is proper .... Because the Court holds that it has personal jurisdiction over defendant Badpuppy, venue is proper in this case").

**38.** AICO continues to have the burden of proof on jurisdiction going forward. See, e.g., *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir.1987) ("Presenting a prima facie case of jurisdiction, however, does not necessarily guarantee jurisdiction over the defendant at

the time of trial. The district court has the discretion to take evidence at a preliminary hearing in order to resolve any questions of credibility or fact that arise subsequent to this appeal"); *Data Disc Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1286 n. 2 (9th Cir.1977) ("Of course, at any time when the plaintiff avoids a preliminary motion to dismiss by making a prima facie showing of jurisdictional facts, he must still prove the jurisdictional facts at trial by a preponderance of the evidence" (citations omitted)).

**39.** This action could properly have been filed in the Southern District of New York. As noted, § 1404 permits the transfer of an action to another district only where the case could originally have been brought in that court. See 28 U.S.C. § 1404(a). To effect a transfer, the transferee court must have subject matter jurisdiction and be a proper venue for the action. Additionally, defendants must be subject to personal jurisdiction in the district, and be amenable to service of process there. See *A.J. Industries, Inc. v. U.S. District Court for Central Dist. of Cal.*, 503 F.2d 384, 386–88 (9th Cir.1974); *Shapiro v. Bonanza Hotel Co.*, 185 F.2d 777, 779–81 (9th Cir. 1950). It appears that each of these criteria is met in the present case. The district court in New York would have subject matter jurisdiction, since the case is filed under the federal copyright and patent laws. Additionally, J.S. Imports has its principal place of business in New York and DFW has consented to personal jurisdiction in the Southern District

*Comm. v. Savage,* 611 F.2d 270, 279 (9th Cir.1979) ("Weighing of factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge"); *E. & J. Gallo Winery v. F. & P.S.p.A.,* 899 F.Supp. 465, 466 (E.D.Cal.1994) (noting that whether to transfer venue is within "the inherently broad discretion of the Court"); see also 15 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 3847 (1986). The district court must "adjudicate motions for transfer [of venue] according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498 (9th Cir.2000) (quoting *Stewart Org. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)).

In deciding a motion to transfer venue, the court must weigh multiple factors, including (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the location of books and records; (5) which forum's law applies; (6) the interests of justice; and (7) administrative considerations. Wright, Miller, & Cooper, *supra,* §§ 3841–55; see also *Jones,* 211 F.3d at 498–99 (suggesting that the following factors may be relevant in assessing a motion to transfer venue: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's

choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof"); *Florens Container v. Cho Yang Shipping,* 245 F.Supp.2d 1086, 1088 (N.D.Cal.2002) ("In considering motions to transfer venue under this section, courts look to: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice," citing *Kasey v. Molybdenum Corp.,* 408 F.2d 16, 20 (9th Cir.1969)).

■ The burden is on the moving party to establish that a transfer would allow a case to proceed more conveniently and better serve the interests of justice. See, e.g., *Commodity Futures Trading Comm.,* 611 F.2d at 279; *STX, Inc. v. Trik Stik, Inc.,* 708 F.Supp. 1551, 1555–56 (N.D.Cal. 1988) ("In seeking to transfer a case to a different district, a defendant bears a heavy burden of proof to justify the necessity of the transfer. The plaintiff's choice of forum should not be easily overturned"). Indeed, "[i]t is clear that the burden is on defendant, when it is the moving party, to establish why there should be a change of forum. It is not enough without more that the defendant would prefer another forum, nor is it enough merely to show that the claim arose elsewhere. Nor will transfer

of New York. It would also be an appropriate venue under 28 U.S.C. § 1391(b), which permits non-diversity actions to be brought in a judicial district "where any defendant resides, if all defendants reside in the same State." For purposes of § 1391, a corporation resides "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). J.S. Imports has its principal place of business in New York, and is therefore subject to personal jurisdiction in New York. As noted, DFW has consented to personal jurisdiction in the

Southern District of New York, making venue proper under § 1391(b) and (c). See *De Lage Financial Servs., Inc. v. Cardservice Intern., Inc.,* No. CIV. A. 00–2355, 2000 WL 1593978, *2 n. 6 (E.D.Pa. Oct.25, 2000) ("Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because defendant is a corporation which consented to personal jurisdiction here"); *A.I. Credit Corp. v. Liebman,* 791 F.Supp. 427, 430 (S.D.N.Y.1992) (venue is proper because defendant is subject to personal jurisdiction in the district by virtue of his consent).

be ordered if the result is merely to shift the inconvenience from one party to another." Wright, Miller, & Cooper, § 3848, at 383–86 (footnotes omitted).

### 1. Plaintiff's Choice of Forum

■ Despite the broad discretion afforded the district court in determining whether to transfer venue, a plaintiff's choice of venue is generally accorded deference. See, e.g., *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir.1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum"); *Florens Container*, 245 F.Supp.2d at 1092 ("[U]nder Ninth Circuit law, a plaintiff's choice of forum is accorded substantial weight in proceedings under this section, and courts generally will not transfer an action unless the 'convenience' and 'justice' factors strongly favor venue elsewhere," citing *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir.1985)); *DIRECTV, Inc. v. EQ Stuff, Inc.*, 207 F.Supp.2d 1077, 1082 (C.D.Cal.2002) ("There is a strong presumption in favor of the plaintiff's choice of forum," citing *Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir.2000)); *E. & J. Gallo Winery*, 899 F.Supp. at 466 (as a general principle "plaintiff's choice of forum should rarely be disturbed").

■ AICO is a California corporation with its principal place of business in Pico Rivera, California.[40] In addition, it contends that the harm it suffered as a result of defendants' actions took place in this district. Generally, the fact that a plaintiff has filed suit in the district where it resides is a sufficient connection to accord its choice of forum deference. See, e.g., *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F.Supp.2d 517, 519 (E.D.Va.1999) ("[P]laintiff's choice of its home forum is given more weight than its choice of a foreign forum"); see also *Bailey v. Union Pac. R.R. Co.*, 364 F.Supp.2d 1227, 1230 (D.Colo.2005) (a plaintiff's choice of forum is entitled to little weight where "[i]t is neither his home nor the place of the accident"); *Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F.Supp.2d 203, 210 (S.D.N.Y.1998) ("[T]he plaintiff's choice is generally accorded more deference where there is a material connection or significant contact between the forum state and the underlying events allegedly underlying the claim, . . . or where the plaintiff is a resident of the forum district"). Consequently, this factor weighs against transfer to the Southern District of New York.

### 2. The Convenience Of The Parties

As noted, AICO is a California corporation with its principal place of business in Pico Rivera, California.[41] J.S. Imports is a New York corporation with its principal place of business in Chappaqua, New York.[42] DFW was a Maryland corporation with its principal place of business in Maryland.[43] On the record before it, it appears at least two of the three parties will be inconvenienced whether the action is tried in the Central District of California or in the Southern District of New York. Accordingly, this factor is at best neutral. See *DIRECTV, Inc. v. EQ Stuff, Inc.*, 207 F.Supp.2d 1077, 1083–84 (C.D.Cal.2002) (a transfer of venue is generally inappropriate if it merely "shift[s] the costs of litigation" from defendants to plaintiff); *K–Tel International, Inc. v. Tristar Products, Inc.*, 169 F.Supp.2d 1033, 1045 (D.Minn. 2001) ("Section 1404(a) provides for transfer to a more convenient forum, 'not to a

---

**40.** First Amended Complaint, ¶ 1.

**41.** *Id.*, ¶ 1.

**42.** Weinberg Decl. I, ¶ 1; JS Import's Mot. at 12:9–10.

**43.** Sagel–Howe Decl. I, ¶ 1.

forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer.' ... Based on the fact that a transfer to New Jersey would only serve to shift the inconvenience between the parties, this court concludes that this factor weighs in favor of maintaining this action in Minnesota"); *RMS Titanic, Inc. v. Geller,* No. 3:99CV2401(JCH), 2000 WL 306997, * 6 (D.Conn. Jan.10, 2000) ("the court is equally cognizant of the fact that '[s]ection 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient.' Thus, where an increase in convenience to the moving parties would result only in an equivalent decrease in convenience to the plaintiffs, a transfer motion will not be granted," quoting *Van Dusen v. Barrack,* 376 U.S. 612, 646, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

### 3. The Convenience Of The Witnesses

██ The convenience of witnesses is often the most important factor in determining whether a transfer pursuant to § 1404 is appropriate. See, e.g., *Denver & Rio Grande Western Ry. Co. v. Brotherhood of Railroad Trainmen,* 387 U.S. 556, 560, 87 S.Ct. 1746, 18 L.Ed.2d 954 (1967) ("[V]enue is primarily a matter of convenience of litigants and witnesses"); *A.J. Industries v. United States Dist. Ct.,* 503 F.2d 384, 386–87 (9th Cir.1974) (discussing the importance and history of the convenience of witnesses in evaluating a § 1404 transfer); *Decter v. MOG Sales, LLC,* No. CV 06–1738 MCE GGH, 2006 WL 3703368, *2 (E.D.Cal. Dec.14, 2006) ("The convenience of the witnesses is said to be the most important factor in considering a transfer motion," citing *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League,* 89 F.R.D. 497, 501 (C.D.Cal. 1981)); *Applied Elastomerics, Inc. v. Z–Man Fishing Products, Inc.,* No. C 06–2469 CW, 2006 WL 2868971, *4 (N.D.Cal. Oct.06, 2006) (same). The court accords less weight to the inconvenience of *party* witnesses, however, as they can be compelled to testify regardless of the forum in which the lawsuit is ultimately litigated. See, e.g., *Applied Elastomerics, Inc.,* 2006 WL 2868971 at *4 (citing *STX, Inc.,* 708 F.Supp. at 1556 (discounting the inconvenience to witnesses who were employees of one of the parties because they could be compelled to testify)); *Hartfield v. Offshore Oil Services, Inc.,* Civil Action No. G–06–275, 2006 WL 2670984, *6 (S.D.Tex. Sept.14, 2006) ("The Court reiterates that the convenience of key witnesses who are employees of the defendant requesting transfer is 'entitled to less weight because that party will be able to compel their testimony at trial,'" quoting *Continental Airlines, Inc. v. American Airlines, Inc.,* 805 F.Supp. 1392, 1397 (S.D.Tex.1992)); *Worldwide Financial LLP v. Kopko,* No. 1:03–CV–0428–DFH, 2004 WL 771219, *3 (S.D.Ind. Mar.18, 2004) ("The courts ordinarily assume that the parties will be sufficiently motivated to have their own partners or employees or other allies appear for trial wherever it might take place. Parties may use Rule 45 of the Federal Rules of Civil Procedure to conduct discovery all over the United States, so the principal concern along these lines is to make non-party witnesses available for trial. The aim is to minimize the risk of 'trial by deposition' " (citations omitted)).

██ "The movant is obligated to clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony would have included." *Fireman's Fund Ins. Co. v. National Bank for Cooperatives,* No. C 92–2667 BAC, 1993 WL 341274, *4 (N.D.Cal. Aug.27, 1993). Here, defendants have not identified the witnesses they contend would be inconvenienced if this action is tried in the Central District of California.

Instead, they offer the conclusory statement that "the witnesses that DFW [and JS] may need to testify in connection with testing the validity of the copyrights and design patents alleged to have been violated are all located in the eastern part of the United States, primarily in New York and New Jersey."[44] Because defendants have failed to provide information regarding their non-California witnesses and the subject matter about which they might testify, defendants have failed to satisfy their burden of demonstrating that litigation in New York would be more convenient for a majority bulk of the third-party witnesses. This factor therefore weighs against transfer to New York. See *Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F.Supp. 62, 66–67 (S.D.N.Y.1993) ("To meet its burden of demonstrating that transfer is in the convenience of the witnesses, the party seeking transfer must 'specifically list the evidence and witnesses on which the party intends to rely in the transferee district, along with a general statement of the topics of each witness' testimony . . . . Absent such a showing, the motion should be denied").[45]

### 4. Which Forum's Law Applies

This factor is neural, as courts in the Central District of California and the Southern District of New York are equally versed in federal patent and copyright law.

### 5. The Interests Of Justice

 "The 'interest[s] of justice' include such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." *Heller Financial,*

*Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir.1989). Neither party has identified any ongoing, related litigation in any other forum. This factor is therefore neutral.

### 6. Administrative Considerations

Administrative considerations such as docket congestion are given little weight in this circuit in assessing the propriety of a § 1404(a) transfer. See *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335 (9th Cir.1984) (forum non conveniens case), cert. denied, 471 U.S. 1066, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985). Neither party has presented evidence regarding the relative congestion of court dockets here and in the Southern District of New York, and the court will thus not take this factor into account in deciding the motion.

### 7. Balancing The Discretionary Factors

As each of the relevant factors is either neutral or weighs against transfer to the Southern District of New York, the court concludes that transfer is not appropriate and denies defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a).

### III. CONCLUSION

For the foregoing reasons, the court denies defendants' motions to dismiss for lack of personal jurisdiction and/or improper venue without prejudice to its renewal after appropriate discovery.[46] It also denies defendants' motion to transfer venue.

---

**44.** DFW's Mot. at 13:4–7; J.S. Imports' Mot. at 12: 12–15.

**45.** Although courts typically consider the location of relevant documents and records, neither party has adduced any evidence re-

garding this subject. Accordingly, the court considers this factor neutral.

**46.** This order does not modify the Federal Rules of Civil Procedure that govern pretrial discovery.